## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VALERIE JACKSON** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:18-cv-2935** |
| | § | |
| **LUPE VALDEZ, MARIAN BROWN,** | § | |
| **OFFICER LIZYAMMA SAMUEL,** | § | |
| **OFFICER SAMUEL JOSEPH,** | § | |
| **OFFICER BRENDA DEVERS,** | § | |
| **OFFICER L. PUGH, OFFICER S.** | § | |
| **LITTLES, OFFICER P. NIXON,** | § | |
| **UNKNOWN DALLAS COUNTY** | § | |
| **EMPLOYEES I-XIII, and DALLAS** | § | |
| **COUNTY, TEXAS,** | § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL COMPL AINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, VALERIE JACKSON, Plaintiff, complaining of LUPE VALDEZ, MARIAN BROWN, OFFICER LIZYAMMA SAMUEL, OFFICER SAMUEL JOSEPH, OFFICER BRENDA DEVERS, OFFICER L. PUGH, OFFICER S. LITTLES, OFFICER P. NIXON, UNKNOWN DALLAS COUNTY EMPLOYEES I-XIII, and DALLAS COUNTY, TEXAS and for cause of action will respectfully show unto the Court as follows:

### I. PARTIES

1.     At all times relevant to this action, Valerie Jackson was an adult individual who was a pre-trial detainee held at the Dallas County jail, which facility is within the Northern District of Texas, and currently resides in Dallas, Texas.

2.     Defendant Lupe Valdez is an individual residing in Dallas County and was the Dallas County Sheriff from January 1, 2005 until January 1, 2018. Defendant Valdez

can be served at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207.

3.      Defendant Marian Brown is an individual residing in Dallas County and is the current Dallas County Sheriff, who was sworn into that position on January 1, 2018. Defendant Brown can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207.

4.       Defendant Officer Lizyamma Samuel is an individual residing in Dallas County, Texas and is a Deputy with the Dallas County Sheriff's Office and can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207. Defendant Samuel is sued in her individual capacity.

5.      Defendant Officer Samuel Joseph is an individual residing in Dallas County, Texas and is a Deputy with the Dallas County Sheriff's Office and can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207. Defendant Joseph is sued in her individual capacity.

6.      Defendant Officer Brenda Devers is an individual residing in Dallas County, Texas and is a Deputy with the Dallas County Sheriff's Office and can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207. Defendant Devers is sued in her individual capacity.

7.      Defendant Officer L. Pugh is an individual residing in Dallas County, Texas and is a Deputy with the Dallas County Sheriff's Office and can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207. Defendant Pugh is sued in her individual capacity.

8.      Defendant Officer S. Littles is an individual residing in Dallas County, Texas and is a Deputy with the Dallas County Sheriff's Office and can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207. Defendant Littles is sued in her individual capacity.

9.      Defendant Officer P. Nixon is an individual residing in Dallas County, Texas and is a Deputy with the Dallas County Sheriff's Office and can be served at her place of employment at the Dallas County Sheriff's Office located at 133 N Riverfront Blvd 31, Dallas, TX 75207. Defendant Nixon is sued in her individual capacity.

10.     Defendant Unknown Dallas County Employees I-XIII are and were, at all times relevant to this Complaint, employed by the Dallas County Sheriff's Office. At all times relevant to this Complaint, Unknown Dallas County Employees were acting under color of law within the scope of their employment at the Dallas County jail. Unknown Dallas County Employees are sued in their individual capacities.

11.      Defendant Dallas County is a political subdivision of the State of Texas located in the Northern District of Texas. Dallas County can be served through its County Judge, Clay Jenkins, at 411 Elm St #200, Dallas, TX 75202.

## II. JURISDICTION AND VENUE

12.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391 because the Defendant is domiciled and/or resides in the Northern District of Texas, and all or a substantial part of the cause of action accrued in the Northern District.

## III. <u>FACTS AND ALLEGATIONS</u>

13.     Defendant Valdez was the Sheriff of Dallas County from January 1, 2005 until January 1, 2018.

14.     On or about November 4, 2016, Plaintiff Valerie Jackson was a pre-trial detainee at the Dallas County jail. She was booked into custody for Possession of a Weapon in a Prohibited Place – essentially she forgot to remove her firearm from her bag before going to the airport.

15.     Ms. Jackson was assigned the sex of male at birth.

16.     Ms. Jackson is a transgender woman, and lives as a woman.

17.     Ms. Jackson has had her gender legally changed to female.

18.     During the intake process at the jail, Ms. Jackson was processed by a female officer, Defendant Lizyamma Samuel, and a male officer, Defendant Samuel Joseph before being placed in the jail. Ms. Jackson was asked all the standard intake questions.

19.     Defendant Joseph or Defendant Samuel verified Ms. Jackson's name and gender on her driver's license.

20.     Ms. Jackson was given a wrist band with her name and the correctly assigned gender of female.

21.     Defendant Samuel then took Ms. Jackson behind an enclosed corner and instructed Ms. Jackson to lift her shirt and bra to expose her bare breasts, which she did.

22.     Ms. Jackson then waited to be seen by a nurse.

23.     A male nurse, Unknown Dallas County Employee I, then began to ask Ms. Jackson medical questions.

24.     Unknown Dallas County Employee I asked Ms. Jackson the date of her last menstrual cycle.

25.      Ms. Jackson replied that she does not have menstrual cycles because she does not have a uterus.

26.      Unknown Dallas County Employee I asked her if she had a hysterectomy, and Ms. Jackson responded that she had not.

27.      Unknown Dallas County Employee I kept asking why she doesn't have menstrual cycles, and Ms. Jackson finally explained that she is transgender.

28.      Unknown Dallas County Employee I had a look of shock on his face and asked why her paperwork says female on it.

29.      Ms. Jackson explained that she is a female.

30.      Unknown Dallas County Employee I left her paperwork the way it was filled out and concluded the medical assessment.

31.      Ms. Jackson was then directed to sit on the benches with the rest of the female inmates.

32.      After around ten minutes, a different male officer, Unknown Dallas County Employee II, pulled Ms. Jackson aside and asked her to identify her gender.

33.      Ms. Jackson responded that she was a female.

34.      Unknown Dallas County Employee II asked, "did you have a sex change or something?"

35.      Ms. Jackson responded that she had.

36.      In front of the rest of the inmates around them, Unknown Dallas County Employee II asked, "have you had everything done even down there?"

37.      Ms. Jackson hesitantly and falsely told him that she had, because she wanted this unnecessary humiliating harassment to end.

38.     Unknown Dallas County Employee II then went to get Defendant Samuel from intake and a female nurse, Unknown Dallas County Employee III.

39.     Unknown Dallas County Employee III and Defendant Samuel took Ms. Jackson behind the same enclosed corner as before, and instructed her to pull down her pants and underwear.

40.     Ms. Jackson asked why she needed to do this.

41.     Defendant Samuel replied, "We need to know if you've had a sex change or not. We need to see if you have a penis or a vagina. We have to protect you. We can't put you with men if you have a vagina."

42.     Ms. Jackson responded that she was not going to pull her pants and underwear down and that she should not have to prove anything to them if none of the other women had to prove anything.

43.     Defendant Samuel then replied, "You are coming up in the system as male. It doesn't matter what you do, it can never be changed."

44.     Defendant Samuel then said, "now our policy is we have to verify that you've had a sex change. If you have a penis you're going with the men. If you have a vagina, you're going with the women."

45.     Ms. Jackson continued to insist that she did not want to pull her pants down.

46.     Defendant Samuel then told Ms. Jackson that they would transfer her to Parkland Hospital if she refused, that Ms. Jackson would have to show her genitals at Parkland Hospital, and that it would add hours to her incarceration.

47.     Ms. Jackson pleaded to sit with the female inmates, who she identified with and whose gender she legally shares.

48.     Defendant Samuel responded, "that's our policy. You can talk to Lupe Valdez about it when you get out."

49.     Ms. Jackson asked if she could do this after going to court if she was unable to make bond.

50.     Defendant Samuel explained that this was the next step of the process and the process could not move forward without Ms. Jackson revealing her genitals, so that they could verify her genitalia.

51.     Feeling that she was out of options and had no other choice, Ms. Jackson pulled her pants and underwear down to her knees so that Unknown Dallas County Employee III and Defendant Samuel could verify her genitalia and gender.

52.     This unconstitutional search conducted by Unknown Dallas County Employees III and Defendant Samuel was conducted for the sole purpose of observing Ms. Jackson's genitals, ostensibly for the purpose of determining whether she is transgender.

53.     This unconstitutional search caused severe distress to Ms. Jackson.

54.     Following this unconstitutionally invasive search to designate Ms. Jackson's gender based exclusively on her genitals, she was told that she could watch TV with the men or could go into a solitary cell.

55.     Defendant Samuel told Ms. Jackson, "It's not uncommon for men that look like women to be sitting in the men's section and vice versa. You'll probably see some like you over there. You aren't the first and you won't be the last".

56.     Ms. Jackson chose to be alone, thinking she could save herself from further harassment.

57.     While waiting for a cell, Ms. Jackson noticed that there was a group of men walking freely outside the solitary cells. She decided that she would be harassed either way and asked to remain in the TV area.

58.     As soon as she made this request, an older male officer, Unknown Dallas County Employee IV, said, "No, you're going with the men because that's what you are. You're a man."

59.     Ms. Jackson was then placed in her own cell, where the male inmates began questioning her through the cell door.

60.     They were asking her if she was a "tranny" or a "real girl", telling her all the sexual things they wanted to do to her, grabbing themselves, calling her a "he/she," and calling her many other derogatory words.

61.     A female officer, Unknown Dallas County Employee V, asked Ms. Jackson if she was alright. Upon responding that she was not alright, the female Unknown Dallas County Employee laughed and told Ms. Jackson, "at least you have someone to talk to."

62.     After enduring the harassment for an unknown amount of time, Ms. Jackson was taken by a male officer for fingerprinting and a mugshot.

63.     A male officer attempted to escort Ms. Jackson back to the women's solitary cells; however, he was told by another officer, Unknown Dallas County Employee VI, to bring her to the men's holding area.

64.     Ms. Jackson was again placed with the male inmates after another embarrassing situation.

65.     Ms. Jackson was eventually taken in a line with male inmates to court. As they walked past another group of men, she was harassed again.

66.     A different female officer, Unknown Dallas County Employee VII, said loudly from across the room, "Why is that woman with all those men?"

67.     A male officer, Unknown Dallas County Employee VIII, then responded from across the room, "because it's a man."

68.     Unknown Dallas County Employee VIII said this twice because Unknown Dallas County Employee VII didn't hear the first time.

69.     This was said in front of all of the other inmates in the area.

70.     During court, Ms. Jackson was referred to as "Mr. Jackson," by the male bailiff and was required to sit with the males.

71.     Ms. Jackson was humiliated every time she encountered a new officer. Each time, they would see her and reference her as a woman, only to be told by whichever officer was escorting her in front of everyone that she was a man.

72.     All Ms. Jackson was able to do was cry as she suffered the worst humiliation of her entire life.

73.     When they arrived back at the jail, the men were placed into a holding cell and Ms. Jackson was placed into a separate cell next to them.

74.     Ms. Jackson was required to fill out new paperwork.

75.     Ms. Jackson was then taken to the male locker room where she was directed toward an empty shower stall by a male officer, Unknown Dallas County Employee IX.

76.     Ms. Jackson was told to strip down and take a shower by Unknown Dallas County Employee IX and that it was something everyone had to do.

77.     Ms. Jackson pleaded with Unknown Dallas County Employee IX to let her skip the shower as her bond was being sent electronically by her lawyer and she should be out of custody soon.

78. The two male officers that were present ignored her pleas.

79. The female officer volunteered to verify what Ms. Jackson was saying and did in fact confirm that the bond was received.

80. The female officer then escorted Ms. Jackson out of the locker room and told her that she, "dodged a bullet."

81. Ms. Jackson was placed back into another holding cell by herself as she waited for her paperwork to process.

82. While she was waiting, another female officer, Unknown Dallas County Employee X, came into the cell and changed Ms. Jackson's wrist band so that it now showed her gender as male.

83. Ms. Jackson was moved multiple times while waiting for her paperwork to be processed, each time encountering new officers and inmates that misidentified her gender based off of the paperwork and the gender of the inmates she was grouped with at the time.

84. After being released from custody, Ms. Jackson filed a formal complaint regarding her treatment in the Dallas County jail.

85. On November 7, 2016, Captain Shelley Knight with the Dallas County Sheriff's Office was notified of Ms. Jackson's treatment through Tammye Nash, the Managing Editor at the Dallas Voice.

86. Captain Knight informed Ms. Nash that an investigation on the incident had been started and that intake video from November 4, 2016 was pulled.

87. Captain Knight also informed Ms. Nash that she (Captain Knight) could see where some of the policy was misconstrued and other parts were not followed.

88.    On April 19, 2017, Ms. Jackson was arrested for a second time and taken to the Dallas County jail.

89.    When booked into the jail, Ms. Jackson was again placed with the male inmates.

90.    Defendant Devers, Defendant Pugh, Defendant Nixon, and Defendant Littles were the detention officers who booked Ms. Jackson into the jail and placed her with the male inmates.

91.    Ms. Jackson asked the Defendants Devers, Pugh, Nixon, and Littles to contact Captain Knight, who could explain that she should be classified and placed with females -- but they refused her request.

92.    Ms. Jackson was taken to the psychiatric unit of the jail due to being deemed suicidal as a result of the continuous harassment she was experiencing.

93.    Ms. Jackson was the only woman in the psychiatric unit with all of the male inmates.

94.    Due to being marked suicidal, Ms. Jackson was not allowed clothing and was given a thin paper suit to wear.

95.    Unknown Dallas County Employee XI forced Ms. Jackson to shower with the men, where one of the male inmates masturbated while staring at her in the shower.

96.    Defendant Brown was sworn in as the Dallas County Sheriff on January 1, 2018 and continues to be the current Dallas County Sheriff.

97.    On June 15, 2018, Ms. Jackson was arrested for a third time and booked into the Dallas County jail.

98.    Ms. Jackson was once again placed with the male inmates by Unknown Dallas County Employee XII.

99.     Ms. Jackson was once again taken to the psychiatric unit; however, this time she was given clothes.

100.    Ms. Jackson once again had to shower with the men, where once again a male inmate masturbated while staring at Ms. Jackson in the shower.

101.    Additionally, a male officer, Unknown Dallas County Employee XIII, recorded her in the shower while she was in the psychiatric unit.

102.    Each time that Ms. Jackson was incarcerated in Defendant Dallas County's facility, she was subjected to continual sexually harassing and offensive comments relating to her gender identity, her transgender status, and her gender expression, by jail staff and inmates.

103.    The Defendants were acting within the course and scope of their employment at the time of the wrongful acts.

104.    Ms. Jackson suffered severe mental anguish as a result of the unconstitutional searches and harassment she endured.

105.    The unconstitutional search to "observe" her genitals and allegedly to "determine" Ms. Jackson's gender and the harassment that accompanied her incarceration was objectively unreasonable as it violated Dallas County Sheriff's Office written policy and violated Plaintiff's rights under the Fourth and Fourteenth Amendment of the United States Constitution.

106.    However, the written policy was essentially overridden or deemed a nullity due to Defendants' actual conduct and performance of observing and searching a person's genitals when that person is believed or known to be transgender for the sole purpose of making a placement decision and ostensibly "determining" the person's gender being so

common and widespread as to constitute a custom that fairly represents the policy of Dallas County, Texas.

107. Defendant Dallas County maintains and implements a policy and practice of classifying transgender inmates based exclusively on genital characteristics rather than their gender identity without any individualized determination of what would be safest, or in the alternative, Defendant Dallas County has failed to properly train and supervise jail staff to follow policy and practice prohibiting the classification of transgender inmates based solely on genital characteristics rather than gender identity.

108. The Prison Rape Elimination Act (PREA) implementing regulations specifically provide that lockup facilities "shall not search or physically examine a transgender or intersex detainee for the sole purpose of determining the detainee's genital status." 28 CFR 115 .15 § 115.lS(e).

109. Defendant Dallas County has failed to properly train and supervise jail staff to treat transgender inmates humanely, such that jail staff refer to transgender inmates by the improper gender pronouns, refer to transgender inmates' genitals and private body parts in offensive manners, alert and announce the fact that transgender inmates are transgender to other inmates and jail staff, force transgender inmates to expose their genitals for the purpose of determining their gender, and place transgender inmates based solely on genital characteristics rather than gender identity.

110. As a result of Defendants' actions, Ms. Jackson has suffered trauma, felt demoralized, anxious, stressed, a loss of dignity, and fear.

111. The Defendants were at all times acting under the color of law. Dallas County had a policy or custom of promoting and/or tolerating genital searches to determine gender identity and placement of inmates based off of genitalia rather than the

gender with which they identify when confronted with a transgender inmate in the Dallas County jail. This classification of transgender inmates based on their genitals rather than gender identity, is demonstrated by the unconstitutionally invasive search of Plaintiff by Defendants and a pattern of similar incidents of classification of Plaintiff based on her genitals rather than her gender identity that she experienced three different times inside of the Dallas County jail.

112.    Additionally, the constitutional violations in this case were the direct result of the policy, custom and practice and general atmosphere within the Dallas County Sheriff's Office and Dallas County jail, both of which are under the umbrella of the Defendant Dallas County.

113.    Dallas County's policy of tolerating its police officers' use of unconstitutional genital searches to determine gender identity and classifications based on genitalia rather than that of gender status was the moving force behind the violation of Plaintiff's constitutional rights. Defendants' reprehensible conduct and inhumane treatment of Plaintiff was a result of the custom, policy, practice and/or procedure of Dallas County.

114.    At the time of the incident, Defendants were acting pursuant to a custom, policy, practice and/or procedure of the Dallas County Sheriff's Office. Defendants' actions constitute a violation of the well-settled right to be free from unreasonable and unnecessary searches under the Fourth and Fourteenth Amendments to the United States Constitution.

115.    Before this incident, Defendant Dallas County developed and maintained a policy, custom or practice that was the moving force behind the constitutional and civil right violations and the injuries suffered by Plaintiff in violation of the Fourth and

Fourteenth Amendments and 42 U.S.C. 1983.  Specifically, the Dallas County Sheriff's Office had a policy, custom, or practice of tolerating the use of genital searches to determine gender identity and placement of inmates based off of genitalia rather than the gender with which they identify; the inadequacy of investigations into incidents reported to superiors such as Captain Shelley Knight; the lack of discipline for incidents of unconstitutional searches and placements described above; and the lack of supervision and reporting procedures to monitor the use of unconstitutional searches and placements by Dallas County employees.

116.    But for these acts and omissions of policy, custom, training, and discipline, Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution would not have been violated.

117.    As a direct result of these acts, Plaintiff has suffered mental/emotional injuries and economic damages. She was deprived of her constitutional rights, all to her damage.

118.    Based on the above, Dallas County also bears responsibility for this incident. Upon information and belief, the policy, custom, and practice of Defendant Dallas County was to perform unconstitutional genital searches to determine gender identity and place inmates based off of genitalia rather than the gender with which they identify. Defendant Dallas County was also aware that its officers would be likely to encounter the same or similar situations as this and that the subjects' civil rights would be violated. Despite that awareness, Defendant Dallas County took no steps to adequately educate or train Dallas County officers on how to handle situations such as this even though the consequences of such practice – severe mental anguish – was known or obvious. As a result, there was a wide spread practice within the Dallas County Sheriff's Office to conduct genital searches

to determine gender identity and to place inmates based off of genitalia rather than the gender with which they identify when confronted with a transgender inmate in the Dallas County jail. These practices and lack of training were so common and widespread as to constitute a custom that fairly represents the policy of Dallas County, Texas. Defendant Samuel even stated that this was the policy of Dallas County.

119.    The failure to ensure that written policies were adequately implemented and the implementation and toleration of the above practices, policies and customs, as well as the lack of adequate training by Dallas County, constitutes deliberate indifference to Plaintiff's constitutional rights. Further, said customs, practices and policies were the moving force, and the direct cause of Plaintiff being unconstitutionally searched and harassed.

## IV. CAUSES OF ACTION

### I.
### Invasive and Unconstitutional Search Under the Fourth and Fourteenth Amendments
### (42 U.S.C § 1983)

120.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

121.    Acting under the color of law, Defendants deprived Plaintiff of the rights and privileges secured to her by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable searches. By their use of force as described above, the Defendants have violated 42 U.S.C. § 1983 and the constitutional provisions cited therein.

122.    As a result of Defendants' malicious invasion and unconstitutional search and seizure to determine Plaintiff's gender identity, Defendants deprived Plaintiff of her

right to equal protection of the laws and impeded the due course of justice, in violation of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

123.    Defendants' actions and omissions deprived Plaintiff of her Constitutional right to bodily privacy and liberty under the Fourteenth Amendment of the United States Constitution and were an unreasonable and unnecessary invasive search and seizure under the Fourth Amendment of the United States Constitution.

124.    As a result of the unconstitutional search used against her, Plaintiff has suffered mental anguish for which she sues herein.

## II.
## Due Process Violation Under the Fifth and Fourteenth Amendments
## (42 U.S.C § 1983)

125.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

126.    Acting under the color of law, Defendants deprived Plaintiff of the rights and privileges secured to her by the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from undue harassment and abuse by placing her with members of the opposite sex. By their violation of PREA, failing to do individualized assessments, and having no documentation that anything was done for any penological reason, as well as the conduct described above, the Defendants have violated 42 U.S.C. § 1983 and the constitutional provisions cited therein.

127.    As a result of Defendants' complete disregard for Plaintiff's rights by placing her and forcing her to shower with members of the opposite sex, Defendants deprived Plaintiff of her right to equal protection of the laws and impeded the due course of justice, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

128.    Defendants' actions and omissions deprived Plaintiff of her Constitutional right to bodily privacy and liberty under the Fourteenth Amendment of the United States Constitution and were a violation of her due process rights under the Fifth Amendment of the United States Constitution.

129.    As a result of the unconstitutional placement with members of the opposite sex, Plaintiff has suffered mental anguish for which she sues herein.

### III.
### Failure to Intervene
### (42 U.S.C § 1983)

130.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

131.    One or more of the Defendants had a reasonable opportunity, had they been so inclined, to prevent another one of the Defendants from violating Plaintiff's rights in the manner described above, but they failed to do so.

132.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

133.    As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

### IV.
### Causes of action against Defendant Dallas County under
### *Monell v. New York City Department of Social Services*
### (42 U.S.C § 1983)

134.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein, and asserts that the same are moving factors which have resulted in the violation of Plaintiff's civil rights.

135.    Plaintiff would show that Defendant Dallas County is liable because a pattern, practice or policy of constitutional violations existed and/or was grossly inadequate training that was likely to result in constitutional violations. At the time of Plaintiff's unconstitutional search and placement with male inmates, this was a widespread practice among the Dallas County jail to conduct genital searches to determine gender identity and to place inmates based off of genitalia rather than the gender with which they identify when confronted with a transgender inmate in the Dallas County jail. The practice was so widespread as to constitute the policy and custom of Dallas County. Dallas County failed to provide constitutionally adequate training and supervision regarding the use of searches to determine gender and placement of transgender inmates. This is evidenced by the three separate incidents of Plaintiff being placed based off of her genitalia rather than the gender with which she identifies.

136.    Defendants were deliberately indifferent to Ms. Jackson's safety and dignity.

137.    Defendants created an official policy, custom, or practice of intentionally disregarding gender information about transgender detainees of the Dallas County Jail. This policy, custom or practice was created with deliberate indifference to the safety and dignity of female transgender detainees. This policy was still in effect at each of the times Ms. Jackson was detained by the Dallas County Sheriff's Office in the Dallas County jail and this policy caused her injuries.

138.    Defendants knew that placing a transgender female detainee, particularly an individual who is feminine-appearing and has breasts, with male detainees in a holding cell would likely lead to injury to the female transgender detainee. Yet despite this knowledge, Defendant Dallas County failed to train its employees on the need to

individually evaluate female transgender pretrial detainees to determine whether the inmate should be placed in a cell alone or with women, instead of with men, and failed to discipline employees under their direct supervision who placed vulnerable female transgender inmates in cells with men.

139.    Defendants made the actual decision to place Ms. Jackson in a cell with men in November 2016, and in doing so, acted with deliberate indifference to Ms. Jackson's safety. Defendants knew that placing Ms. Jackson with male detainees in a holding cell would likely lead to her being injured, but intentionally, deliberately, or recklessly disregarded that risk.

140.    Defendants made the actual decision to place Ms. Jackson in a cell with men in April 2017, and in doing so, acted with deliberate indifference to Ms. Jackson's safety. Defendants knew that placing Ms. Jackson with male detainees in a holding cell would likely lead to her being injured, but intentionally, deliberately, or recklessly disregarded that risk.

141.    Defendants made the actual decision to place Ms. Jackson in a cell with men in June 2018, and in doing so, acted with deliberate indifference to Ms. Jackson's safety. Defendants knew that placing Ms. Jackson with male detainees in a holding cell would likely lead to her being emotionally injured and embarrassed, but intentionally, deliberately, or recklessly disregarded that risk.

142.    Defendants made the actual decision in April 2017 to require Ms. Jackson, when she had to shower, to do so with and in full view of men, thus exposing her genitalia and breasts. In doing so, Defendants acted with deliberate indifference to Ms. Jackson's safety and dignity. Defendants knew that requiring Ms. Jackson to shower with and in full view of men would likely lead to her being emotionally injured and embarrassed, but

intentionally, deliberately, or recklessly disregarded that risk. Defendants Dallas County failed to train its employees on the need to allow female transgender pretrial detainees the same privacy accorded to other female detainees, and failed to supervise and discipline employees under their direct supervision who required female transgender detainees to shower with and in front of men, and failed to supervise and discipline employees under their direct supervision who decided or ordered female transgender detainees to shower with and in front of men.

143.    Defendants made the actual decision in June 2018 to require Ms. Jackson, when she had to shower, to do so with and in full view of men, thus exposing her genitalia and breasts. In doing so, Defendants acted with deliberate indifference to Ms. Jackson's safety and dignity. Defendants knew that requiring Ms. Jackson to shower with and in full view of men would likely lead to her being emotionally injured and embarrassed, but intentionally, deliberately, or recklessly disregarded that risk. Defendant Dallas County failed to train its employees on the need to allow female transgender pretrial detainees the same privacy accorded to other female detainees, and failed to supervise and discipline employees under their direct supervision who required female transgender detainees to shower with and in front of men, and failed to supervise and discipline employees under their direct supervision who decided or ordered female transgender detainees to shower with and in front of men.

144.    Defendants conducted the unconstitutional genital search of Ms. Jackson in which she was forced to pull down her pants and underwear to expose her genitals for the sole purpose of determining her gender identity in November 2016, knowing that this would be embarrassing, degrading and humiliating to Ms. Jackson. In doing so, Defendants acted with deliberate indifference to Ms. Jackson's safety and dignity.

Defendants knew that requiring Ms. Jackson to expose her genitals for the sole purpose of determining her gender identity would likely lead to her being emotionally injured and embarrassed, but intentionally, deliberately, or recklessly disregarded that risk. Defendant Dallas County failed to train its Employees on the appropriate way to determine a transgender inmate's gender identity, which is by the gender with which they identify with, and failed to supervise and discipline employees under their direct supervision who required female transgender detainees to expose their genitals for the sole purpose of determining their gender identity, and failed to supervise and discipline employees under their direct supervision who decided or ordered female transgender detainees to expose their genitals for the sole purpose of determining their gender identity. In doing so, Defendants violated Ms. Jackson's constitutional rights.

145.   Defendant Dallas County knew or should have known at the time of the occurrence that this was a situation which its officers would have to deal with on a regular basis. Similarly, Dallas County knew or should have known that this situation had the real potential for injury and/or serious harm to a citizen. Despite that, Defendant Dallas County retained its policy and at the same time provided no training or inadequate training to its officers on how to deal with this situation.

146.   The above practices, policies and customs, as well as the constitutionally inadequate training, by Dallas County constituted deliberate indifference towards Plaintiff's constitutional rights and the safety and dignity of female transgender detainees. The subsequent violation of those constitutionally protected rights (including the Fourth, Fifth, and Fourteenth Amendments) was a direct and foreseeable cause of her injury. As a result, Plaintiff is entitled to recover actual damages as a matter of law.  Plaintiff sues Dallas County for actual and exemplary damages. The practices, policies and customs

and/or the constitutionally inadequate training were the moving forces behind the constitutional violations that resulted in the mental/emotional injuries of Plaintiff.

147.    Dallas County Sheriff's Office employees have engaged and continue to engage in a pattern or practice of conducting genital searches to determine gender identity and to place inmates based off of genitalia rather than the gender with which they identify when confronted with a transgender inmate in the Dallas County.

148.    Defendant Dallas County and the Dallas County Sheriff's Office, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the Dallas County Sheriff's Office officers heretofore described.

149.    At all times relevant to this Complaint, the Defendants, as officers for the Dallas County Sheriff's Office, were acting under the direction and control of Defendant Dallas County.

150.    The actions and inaction of Defendant Dallas County were a proximate cause of Plaintiff's injuries and the suffered damages described herein.

## V. **Qualified Immunity**

151.    It is anticipated Defendants will raise, or attempt to raise, a defense of qualified immunity. In this regard, Plaintiff pleads that it was well-established law, well before November 4, 2016, April 19, 2017, and June 15, 2018, that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful search by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, and to be free from being placed with inmates of the opposite sex and being required to shower with them resulting in unconstitutional violations of their due process rights in accordance with the Fifth Amendment to the United States Constitution,

both rights as applied to the several States through the Fourteenth Amendment. No reasonable law enforcement official would have acted as Defendants did under these circumstances, by conducting a genital search of Plaintiff to determine her gender identity and placing Plaintiff with male inmates based off of her genitalia rather than the gender with which she identifies.

152.    The search and subsequent placement with male inmates were unnecessary, unwarranted, and objectively unreasonable. The Defendants are not, therefore, entitled to the protection of qualified immunity for their actions.

## VI. <u>Exemplary Damages</u>

153.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

154.    When viewed objectively from the standpoint of Defendants, at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

155.    As a direct and proximate and producing cause and the intentional, egregious, malicious conduct by the Defendants, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VII. <u>Damages</u>

156.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

157.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendants' use of conducting a genital search to determine Plaintiff's gender identity and by placing Plaintiff based off of her genitalia rather than the gender with which she identifies. As a result, Plaintiff is entitled to recover all actual

damages allowed by law. Additionally, Plaintiff contends Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to the constitutionally protected rights of Plaintiff.  As a result, Plaintiff is entitled to punitive damages.

158.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

      a.      Emotional distress, torment, and mental anguish in the past and future;

      b.      Financial Expenses.

159.    Pursuant to 42 U.S.C. § 1983 and 1988, and Texas Civil Practice & Remedies Code section 41.003(a), Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, and costs of court.

### VIII.  Attorneys' Fees

160.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

### IX.  Jury Request

161.    Plaintiff respectfully requests a jury trial.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

                      Respectfully submitted,

                      /s/ Scott H. Palmer
                      SCOTT H. PALMER
                      State Bar No. 00797196
                      JAMES P. ROBERTS

State Bar No. 24105721
J.R. FLETCHER
State Bar No. 24038304

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
jr@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF