IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VALERIE JACKSON | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:18-cv-2935** |
| | § | |
| LUPE VALDEZ, MARIAN BROWN, | § | |
| SAMUEL JOSEPH, LIZYAMMA | § | |
| SAMUEL, UNKNOWN DALLAS | § | |
| COUNTY EMPLOYEE III, and | § | |
| DALLAS COUNTY, TEXAS, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS

SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone:     214.987.4100
Facsimile:     214.922.9900
scott@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………ii

TABLE OF AUTHORITIES……………………………………………………………….......iii

INTRODUCTION AND BACKGROUND..…………………………………………………...1

ARGUMENT AND AUTHORITIES……………………………………………………………..4

I.      Standards for evaluating motions to dismiss under Rule 12(b)(6)………………………4

II.     Defendant Dallas County's motion to dismiss Plaintiff's Monell claim should be
        denied based on the allegations demonstrating a custom and/or policy of permitting
        unconstitutional strip searches was a moving force behind the violation of Plaintiff's
        constitutional rights……………………………………………………………………..6

        A.      Requirements for bringing a claim for Monell liability……………………………6

        B.      Plaintiff has alleged a custom and/or policy of permitting unconstitutional
                strip searches and refusal to recognize the legal gender of transgender
                individuals that was a moving force behind the violation of her constitutional
                rights………………………………………………………………………………7

        C.      Plaintiff has alleged clear violations of her constitutional rights…………………10

III.    Plaintiff has raised allegations sufficient to sustain a claim regarding Defendant's
        failure to properly train its employees, which led to the violation of Plaintiff's
        constitutional rights……………………………………………………………………14

IV.     Defendant's argument that Plaintiff has failed to sufficiently plead Monell liability
        based on TCJS rules is nothing more than misdirection and mischaracterization………16

V.      Plaintiff should be permitted an opportunity to amend her Complaint to cure any
        perceived deficiencies so that this case may be decided on the merits…………………18

PRAYER…………………………………………………………………………………………19

CERTIFICATE OF SERVICE…………………………………………………………………...20

# TABLE OF AUTHORITIES

<u>**Cases**</u>

Ashcroft v. Iqbal,
  556 U.S. 662, 129 S. Ct. 1937 (2009)……………………………………………………...4

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544, 127 S.Ct. 1955 (2007) …………………………………………………4,5

Bennett v. City of Slidell,
  728 F.2d 762, 768 (5th Cir. 1984) …………………………………………………………7

Bennett v. City of Slidell,
  735 F.2d 861, 862 (5th Cir. 1984)……………………………………………………………6

Brosseau v. Haugen,
  543 U.S. 194, 125 S.Ct. 596 (2004)……………………………………………………...11

Brown v. Bryan Cnty., Okla.,
  219 F.3d 450 (5th Cir.2000) …………………………………………………………14

Brown v. City of Houston,
  297 F. Supp. 3d 748 (S.D. Tex. 2017) ……………………………………………………5

City of Canton v. Harris,
  489 U.S. 378, 109 S.Ct. 1197 (1989) …………………………………………...6,14,15,16

Collins v. Harker Heights,
  503 U.S. 115, 112 S.Ct. 1061 (1992) ……………………………………………………12

Collins v. Morgan Stanley Dean Witter,
  224 F.3d 496 (5th Cir. 2000) ……………………………………………………………5

Conley v. Gibson,
  355 U.S. 41, 78 S.Ct. 99 (1957) ………………………………………………………..4

County of Sacramento v. Lewis,
  523 U.S. 833, 118 S.Ct. 1708 (1998) …………………………………………...12,13

Darden v. Mario Sinacola & Sons Excavating, Inc.,
  4:17-CV-00389, 2017 WL 4583777 (E.D. Tex. Sept. 20, 2017) …………………………5

Doss v. South Central Bell Tel. Co.,
  834 F.2d 421 (5th Cir. 1987) …………………………………………………………...5

Dussouy v. Gulf Coast Investment Corporation,
        660 F.2d 594 (5th Cir.1981) …………………………………………………………18,19

Evans v. Stephens,
        407 F.3d 1272 (11th Cir.2005) …………………………………………………………..11

Foman v. Davis,
        371 U.S. 178, 83 S. Ct. 227 (1962) ……………………………………………………18

Friedlander v. Nims,
        755 F.2d 810 (11th Cir.1985) …………………………………………………………18

Fuller v. Rich,
        925 F. Supp. 459 (N.D. Tex. 1995) …………………………………………………..18

Grandstaff v. Barger,
        767 F.2d 161 (5th Cir. 1985) …………………………………………………………15

In re Katrina Canal Breaches Litig.,
        495 F.3d 191 (5th Cir. 2007) …………………………………………………………...5

Iskander v. Village of Forest Park,
        690 F.2d 126 (7th Cir. 1982) …………………………………………………………10

Kinzie v. Dallas County Hosp. Dist.,
        239 F. Supp. 2d 618 (N.D. Tex. 2003), aff'd, 106 Fed. Appx. 192 (5th Cir. 2003)………..13

Languirand v. Hayden,
        717 F.2d 220 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2656 (1984)…………7

Lone Star Motor Imp., Inc. v. Citroen Cars Corp.,
        288 F.2d 69 (5th Cir. 1961) …………………………………………………………...19

Lowrey v. Texas A&M Univ. Sys.,
        117 F.3d 242 (5th Cir. 1997) …………………………………………………………...5

Monell v. New York City Department of Social Services,
        436 U.S. 658 (1978) …………………………………………………………………...passim

Morris v. Dearborne,
        181 F.3d 657 (5th Cir.1999) …………………………………………………………..13

Obergefell v. Hodges,
        — U.S. —, 135 S.Ct. 2584 (2015) …………………………………………………………11

Oklahoma City v. Tuttle,
    471 U.S. 808, 105 S.Ct. 2427 (1985) ……………………………………………………..6

Oporto v. City of El Paso,
    EP-10-CV-110, 2010 WL 3503457 (W.D. Tex. Sept. 2, 2010) ……………….....14,15,16

Planned Parenthood of Se. Pa. v. Casey,
    505 U.S. 833, 112 S.Ct. 2791 (1992) ………………………………………………...11,12

Schultea v. Wood,
    47 F.3d 1427 (5th Cir. 1995) ……………………………………………………………..5

Sherman v. Hallbauer,
    455 F.2d 1236 (5th Cir. 1972) ……………………………………………………....18

Spivey v. Robertson,
    197 F.3d 772 (5th Cir. 1999) ……………………………………………………………...5

U.S. v. Cameron,
    538 F.2d 254 (9th Cir.1976) ……………………………………………………………10

Webster v. City of Houston,
    735 F.2d 838 (5th Cir.1984) …………………………………………………………… .6

W. Va. State Bd. of Educ. v. Barnette,
    319 U.S. 624, 63 S.Ct. 1178 (1943) ………………………………………………………11

Williams v. Kaufman Cty.,
    352 F.3d 994 (5th Cir. 2003) ……………………………………………………………...6

Whole Woman's Health v. Hellerstedt,
    231 F. Supp. 3d 218 (W.D. Tex. 2017) …………………………………………………..11

**Rules of Procedure and Statutes**

FED. R. CIV. P. 8………………………………………………………………………………...4

FED. R. CIV. P. 12………………………………………………………………....…….. 4,5

FED. R. CIV. P. 15…………………………………………………………………….....18

42 U.S.C. § 1983………………………………………………………………………passim

28 CFR § 115.6………………………………………………………………………………...8

28 CFR § 115.15………………………………………………………………………………13

28 CFR § 115.111……………………………………………………………………………8

Tex. Admin. Code § 271.1…………………………………………………………………..9

Tex. Admin. Code § 271.4…………………………………………………………………..9

## INTRODUCTION AND BACKGROUND[1,2]

Plaintiff Valerie Jackson was assigned the sex of male at birth. Ms. Jackson is a transgender woman, and lives as a woman. Ms. Jackson had her gender legally changed to female prior to the events giving rise to her causes of action in this case.

On or about November 4, 2016, Ms. Jackson was a pre-trial detainee at the Dallas County jail.[3] She was booked into custody for Possession of a Weapon in a Prohibited Place – essentially, she forgot to remove her firearm from her bag before going to the airport.

During the intake process at the jail, Ms. Jackson was processed by a female officer, either S. Joseph or L. Samuel. Ms. Jackson was asked all the standard intake questions. S. Joseph or L. Samuel verified Ms. Jackson's name and gender on her driver's license.

 Ms. Jackson was given a wrist band with her name and the correctly assigned gender of female. S. Joseph or L. Samuel then took Ms. Jackson behind an enclosed corner and instructed Ms. Jackson to lift her shirt and bra to expose her bare breasts, which she did.

Ms. Jackson then waited to be seen by a nurse. A male nurse, Unknown Dallas County Employee I, then began to ask Ms. Jackson medical questions. Unknown Dallas County Employee I asked Ms. Jackson the date of her last menstrual cycle.  Ms. Jackson replied that she does not have menstrual cycles because she does not have a uterus. Unknown Dallas County Employee I asked her if she had a hysterectomy, and Ms. Jackson responded that she had not. Unknown Dallas County Employee I kept asking why she doesn't have menstrual cycles, and Ms. Jackson finally

---

[1] All factual assertions herein are alleged in Plaintiff's First Amended Petition.

[2] Plaintiff is no longer pursuing claims against Brenda Devers, Lola Pugh, Selma Littles, Pamela Nixon, or Unknown Dallas County Employees I-II, IV-XIII.

[3] Defendant Valdez was the Sheriff of Dallas County from January 1, 2005 until January 1, 2018. Defendant Brown was sworn in as the Dallas County Sheriff on January 1, 2018 and has since served as Dallas County Sheriff.

explained that she is transgender. Unknown Dallas County Employee I had a look of shock on his face and asked why her paperwork says female on it.  Ms. Jackson explained that she is a female.

Unknown Dallas County Employee I left her paperwork the way it was filled out and concluded the medical assessment. Ms. Jackson was then directed to sit on the benches with the rest of the female inmates.

After around ten minutes, a different male officer, Unknown Dallas County Employee II, pulled Ms. Jackson aside and asked her to identify her gender. Ms. Jackson responded that she was a female.

Unknown Dallas County Employee II asked, "did you have a sex change or something?" Ms. Jackson responded that she had.

In front of the rest of the inmates around them, Unknown Dallas County Employee II asked, "have you had everything done even down there?" Ms. Jackson hesitantly and falsely told him that she had, because she wanted this unnecessary and humiliating harassment to end.

Detention officers then proceeded to repeatedly question her gender identity, refused to recognize her legal gender, forced her to engage in a humiliating strip search, and placed her with the male detention population.

It was repeatedly declared that it was official policy to perform strip searches to confirm gender and whether an individual has had a sex change. Indeed, S. Joseph or L. Samuel explained that a strip search was the next step of the process and **the process could not move forward without Ms. Jackson revealing her genitals, so that they could verify her genitalia**.

Official policy, as explained by Dallas County detention personnel, is "If you have a penis you're going with the men. If you have a vagina, you're going with the women." In fact, S. Joseph or L. Samuel informed Ms. Jackson, **"that's our policy. You can talk to Lupe Valdez about it**

2

**when you get out.”** Ms. Jackson complied with the compelled strip search, as she felt she had no other choice.

Following the compelled strip search, Ms. Jackson requested to be placed with her legally recognized gender and was told “**No, you’re going with the men because that’s what you are. You’re a man.”** Upon being placed on the detention area for male detainees, Ms. Jackson was taunted, ridiculed and harassed. Ms. Jackson’s was even laughed at by detention center personnel after seeing her torment. Ultimately, detention center personnel changed Ms. Jackson’s wrist band so that it now showed her gender as male.

The above represents only a sampling of the abusive conduct by detention center employees and the harassment Ms. Jackson had to endure.

After being released from custody, Ms. Jackson filed a formal complaint regarding her treatment in the Dallas County jail. On November 7, 2016, Captain Shelley Knight with the Dallas County Sheriff’s Office was notified of Ms. Jackson’s treatment by Tammye Nash, the Managing Editor at the Dallas Voice. Captain Knight informed Ms. Nash that an investigation on the incident had been started and that intake video from November 4, 2016 was pulled. Captain Knight also informed Ms. Nash that she (Captain Knight) could see where some policy was misconstrued and other parts were not followed.

On April 19, 2017, Ms. Jackson was arrested for a second time and taken to the Dallas County jail. When booked into the jail, Ms. Jackson was again placed with the male inmates and endured similar mistreatment by both detention center personnel and other detainees. This time, however, Ms. Jackson was forced to shower with male detainees, where one of the male inmates masturbated while staring at her in the shower.

On June 15, 2018, Ms. Jackson was arrested for a third time and booked into the Dallas County jail. Ms. Jackson was once again placed with the male inmates. And again, Ms. Jackson had to shower with the men, where once again a male inmate masturbated while staring at Ms. Jackson in the shower. Additionally, a male detention officer recorded video of her in the shower.

The detention center personnel were acting within the course and scope of their positions as either Dallas County Sheriff or as Dallas County employees at the time of the wrongful acts. All other Dallas County employees involved in the violation of Plaintiff's constitutional rights were acting within the course and scope of their employment at the time of the wrongful acts.

Dallas County's motion to dismiss is based primarily on misrepresentation and misdirection. Dallas County's arguments have no basis in law or fact. This Court should deny Defendant's attempt at dismissing Plaintiff's causes of action, permit discovery to be conducted, and allow this case to proceed to a decision on the merits.

## ARGUMENTS AND AUTHORITIES

### I.  Standards for evaluating motions to dismiss under Rule 12(b)(6).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard of Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Specific facts are unnecessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). When qualified immunity is asserted in an answer or motion to dismiss, "'the district court must'—as always—do no more than determine

4

whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.' <u>Brown v. City of Houston</u>, 297 F. Supp. 3d 748, 773 (S.D. Tex. 2017) (quoting <u>Schultea v. Wood</u>, 47 F.3d 1427, 1430 (5th Cir. 1995)).

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205-06 (5th Cir.2007). The Court must also examine the complaint to determine if the allegations provide relief on any possible legal theory. <u>Doss v. South Central Bell Tel. Co.</u>, 834 F.2d 421, 424 (5th Cir. 1987). "The court will 'not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.'" <u>Darden v. Mario Sinacola & Sons Excavating, Inc.</u>, 4:17-CV-00389, 2017 WL 4583777, at *1 (E.D. Tex. Sept. 20, 2017), report and recommendation adopted, 4:17-CV-00389, 2017 WL 4574583 (E.D. Tex. Oct. 13, 2017) (quoting <u>Spivey v. Robertson</u>, 197 F.3d 772, 774 (5th Cir. 1999)). The pleadings include the complaint and any documents attached to it. <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000). A motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." <u>Lowrey v. Texas A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).

To state a claim, Plaintiff must merely plead "enough facts to state a claim to relief that is plausible on its face," <u>Twombly</u>, 550 U.S. at 570, and need only plead those facts with enough specificity "to raise a right to relief above the speculative level," <u>Id</u>. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. <u>Id</u>. at 556, 127 S.Ct. 1955.

**II.     Defendant Dallas County's motion to dismiss Plaintiff's <u>Monell</u> claim should be denied based on the allegations demonstrating a custom and/or policy of permitting unconstitutional strip searches was a moving force behind the violation of Plaintiff's constitutional rights.**

**A.   Requirements for bringing a claim for <u>Monell</u> liability.**

Defendant Dallas County's motion to dismiss Plaintiff's <u>Monell</u> claim should be denied based on the allegations demonstrating Defendant Dallas County's customs and/or policies permitting unconstitutional strip searches.

In a <u>Monell</u> action, a governmental entity may be held liable for unconstitutional acts of its employees when they are acting under governmental policy. <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 694 (1978) (holding local governmental entity may be liable where constitutional injury is the result of a "policy or custom" that may be fairly attributable to official policymakers); <u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984). The policy or custom relied upon to establish liability may include the inaction of official policymakers reflecting "deliberate indifference" to the rights of the plaintiff, and that such indifference is a "closely related" cause of the plaintiff's injuries. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 391, 109 S.Ct. 1197 (1989).

Liability may be based upon a custom of behavior among non-policymaking employees, which may be contrary to official policy, <u>see</u> <u>Webster v. City of Houston</u>, 735 F.2d 838, 849-54, 856 (5th Cir.1984) (dissenting opinion), or when the "policy" challenged is not a deliberate choice among alternatives by a policymaker but is instead an inferred, informal policy, <u>see</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 820–24, 105 S.Ct. 2427 (1985) (plurality opinion); <u>see also</u> <u>Williams v. Kaufman Cty.</u>, 352 F.3d 994, 1014 (5th Cir. 2003) (affirming municipal liability based on the unwritten policy for executing certain warrants by conducting strip searches of detainees with individualized suspicion). Under such circumstances, a plaintiff cannot rely on a single instance

6

of unconstitutional conduct, but must establish a "pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." <u>Languirand v. Hayden</u>, 717 F.2d 220, 227-28 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2656 (1984). In such "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 768 (5th Cir. 1984).

Keeping the above standards in mind, Plaintiff will show below that she has more than adequately pleaded a claim for <u>Monell</u> liability against Defendant in this case.

**B. Plaintiff has alleged a custom and/or policy of permitting unconstitutional strip searches and refusal to recognize the legal gender of transgender individuals that was a moving force behind the violation of her constitutional rights.**

In should be initially recognized that Defendant's motion to dismiss does not dispute that Ms. Jackson's constitutional rights were violated by its employees. Defendant only argues that there was no custom or policy that was a moving force behind the violation of Ms. Jackson's constitutional rights. This argument is easily addressed by the statements of Defendant's own employees. Specifically, it is alleged that, in the course of compelling Plaintiff to submit to an examination of her genitalia, one of Defendant's employees, explained **"our policy is we have to verify that you've had a sex change. If you have a penis you're going with the men. If you have a vagina, you're going with the women."** Additionally, one of Defendant's employees declared **"that's our policy. You can talk to Lupe Valdez about it when you get out."** ECF #18, First Amended Complaint at ¶ 44. A clearer statement attributing a policy to the policy maker, Sheriff Lupe Valdez, would be difficult to find. Yet, Defendant pretends the above allegations do

not exist. Defendant's lack of candor and willful ignorance of the above allegations attributing the policy to its official policy maker is frankly dumbfounding.

Additionally, Defendant repeatedly ignores one of the key allegations in this case — that Plaintiff was subjected to an unreasonable strip search. Defendant's willful blindness to this central allegation telegraphs the fact it has no defense against it.

Defendant also ignores the fact that the conduct permitted by Defendant's unwritten custom, policy, and practice violates the Prison Rape Elimination Act. Specifically, 28 CFR § 115.115(d) provides that a lockup facility "shall not search or physically examine a transgender or intersex detainee for the sole purpose of determining the detainee's genital status."[4] Also, 28 CFR § 115.111 requires detention facilities to have a "zero tolerance" policy regarding sexual abuse of detainees. 28 CFR § 115.6 defines sexual abuse as follows:

> Sexual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer includes any of the following acts, with or without consent of the inmate, detainee, or resident:

> (8) Voyeurism by a staff member, contractor, or volunteer.[5]

Not only was there no "zero tolerance" policy, but the custom, policy and practice followed by Defendant's employees permitted sexual abuse of transgender detainees. The custom, policy, and

---

[4] Defendant argues that being given the option of going to the hospital for a strip search eliminates the unreasonable nature of the search. But such does not address the fact that the strip search was prohibited by the Prison Rape Elimination Act (and therefore necessarily unreasonable) and further would have added hours to Plaintiff's incarceration and prolonged the mistreatment she was experiencing. Not only was having the strip search conducted at the hospital not an option that would have made the strip search reasonable, but such was not a valid option because prolonging the incarceration was coercive.

[5] "Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions." 28 CFR § 115.6

practice of permitting the conduct described above is in direct conflict with the above regulations, and resulted in the violation of Plaintiffs civil rights.

Furthermore, the custom, policy and practice followed by Defendant's employees conflicts with Texas Administrative Code § 271.1(a)(6), which requires that "female inmates shall be separated by sight and sound from male inmates." Plaintiff is legally female; thus, she should have been separated by sight and sound from male inmates. Instead, the Defendant's employees outwardly declared the policy: "our policy is we have to verify that you've had a sex change. If you have a penis you're going with the men. If you have a vagina, you're going with the women." ECF #18, First Amended Complaint at ¶ 44. Additionally, the custom, policy and practice followed by Defendant's employees violated Texas Administrative Code § 271.4, which requires a documented appeals process for classification assessments, reassessments, and housing. No appeals process was made available to Plaintiff, regardless of her so pleading for such relief.

Defendant argues that being given the option of going to the hospital for the strip search eliminates the unreasonable nature of the search. But such does not address the fact that the strip search was prohibited by the Prison Rape Elimination Act (and therefore necessarily unreasonable) and further would have added hours to Plaintiff's incarceration and prolonged the mistreatment she was experiencing. Not only was having the strip search conducted at the hospital not an option that would have made the strip search reasonable, but such was not a valid option because prolonging the incarceration was coercive.

The allegations of a custom, policy and practice of permitting unconstitutional strip searches, sexual abuse, and denial of gender identity is not based on a single incident, but rather on a pattern of conduct demonstrating the pervasive nature of the custom, policy, and practice. Specifically, **the violations occurred on multiple occasions to Plaintiff, and to others**. ECF #18,

First Amended Complaint at ¶ 138 and Exhibit B attached thereto (identifying additional incidents in which individuals have experienced compelled strip searches at the Dallas County Jail in order to determine gender).[6] The repeated acts violating Plaintiff's civil rights (and those of others) by requiring and coercing submission to an unreasonable strip search solely for the purpose of disproving her identified gender, violating her constitutional right to bodily privacy, denying her legal gender identity by refusing to recognize her as female, and permitting repeated sexual abuse all evidences a pervasive and pernicious custom, policy and practice permitting the violation of transgender individuals' constitutional rights.

Based on the above, Plaintiff has clearly alleged Defendant's unconstitutional policies, customs, and practices that were a moving force behind the violation of Ms. Jackson's civil rights. Consequently, this Court should deny Defendant Dallas County's motion to dismiss her <u>Monell</u> claim.

### C.  Plaintiff has alleged clear violations of her constitutional rights.

Plaintiff has alleged violations of her Fourth Amendment right to be free from unreasonable searches, her constitutional right to bodily privacy, as well as violations of her due process rights and the right to equal protection. The Fourth Amendment right to be free from unreasonable strip searches has been confirmed by on multiple occasions. <u>Iskander v. Village of Forest Park</u>, 690 F.2d 126, 129 (7th Cir.1982) (noting that "even in cases where routine strip searches are justified by legitimate security concerns, they nevertheless 'must be conducted in a reasonable manner.'" and that all searches must be comport "with the reasonableness requirement imposed on all searches under the Fourth Amendment…."); <u>U.S. v. Cameron</u>, 538 F.2d 254, 258 (9th Cir.1976)

---

[6] It should be kept in mind that the allegations as they now stand are without the benefit of any discovery having been conducted. It is anticipated that numerous additional instances of unconstitutional strip searches and other civil rights violations in relation to transgender individuals will come to light once discovery is permitted.

("[A]ny body search, if it is to comport with the reasonableness standard of the fourth amendment, must be conducted with regard for the subject's privacy and be designed to minimize emotional and physical trauma" and would include "reasonable steps to mitigate the anxiety, discomfort, and humiliation that the suspect may suffer"); Cf. Evans v. Stephens, 407 F.3d 1272 (11th Cir.2005) (holding no case law on point was needed to establish search was unreasonable, as Fourth Amendment itself requires reasonableness and the violation was obvious).[7]

Additionally, it must be recognized that gender identity, choices regarding one's personal beliefs, and how an individual chooses to live their life are substantive due process rights.  As explained by the United States District Court for the Western District of Texas, "the Due Process Clause of the Fourteenth Amendment extends protection 'to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.'" Whole Woman's Health v. Hellerstedt, 231 F. Supp. 3d 218, 227–28 (W.D. Tex. 2017) (quoting Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 2597–98, 192 L.Ed.2d 609 (2015)). "Put another way, the connection between personal identity, belief, and liberty drives the Constitution's protection of certain personal choices." Id. (citing W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion ...."); Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("[M]atters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment.").

---

[7] "Of course, in an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law." Brosseau v. Haugen, 543 U.S. 194, 199, 125 S.Ct. 596 (2004).

Although addressing the subject of abortion, the U.S. Supreme Court discussed the liberty interests involved, and those at risk, when personal beliefs meet state action: "At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State." Casey, 505 U.S. at 851, 112 S.Ct. 2791. In determining whether a state may limit a woman's ability to obtain an abortion in certain circumstances, the Supreme Court stressed it "is too intimate and personal for the State to insist, without more, upon its own vision of the woman's role" and such decisions "must be shaped to a large extent on her own conception of her spiritual imperatives and her place in society." Id. at 852, 112 S.Ct. 2791. These comments apply similarly in the present context in which the conduct of government officials has proscribed a individual's own conception of her identity.

It should also be noted that an individual's substantive due process rights are violated if a state actor's conduct "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting Collins v. Harker Heights, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Conduct "shocks the conscience" if it "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 846-47, 118 S.Ct. 1708 (internal quotations and citations omitted).

In a substantive due process claim based on conduct that "shocks the conscience," "the threshold question is whether the behavior of the governmental officer is so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 847 n. 8, 118 S.Ct. 1708. "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." Morris v. Dearborne, 181 F.3d 657, 668 (5th Cir.1999) (citing Lewis, 523 U.S. at 847 n. 8, 118 S.Ct. 1708); Kinzie v. Dallas County Hosp. Dist., 239 F. Supp. 2d 618, 628 (N.D. Tex. 2003), aff'd, 106 Fed. Appx. 192 (5th Cir. 2003). Although "the measure of what is conscience shocking is no calibrated yard stick, it does ... point the way." Lewis, 523 U.S. at 847, 118 S.Ct. 1708. The question this Court must decide in relation to a "shocks the conscience" claim is whether the allegations of Plaintiff's Complaint state facts which rise to the level of being outrageous or egregious in a constitutional sense and therefore, if proved, state a claim upon which Plaintiff could recover. *Kinzie*, 239 F. Supp. 2d at 628.

Here, Defendants' actions deprived Plaintiff of her legally recognized identity. A more Orwellian deprivation of civil rights would be difficult to conceive.  Moreover, the Prison Rape Elimination Act specifically prohibits the conduct in this case[8] and such represent clear violations of Plaintiff due process rights secured by the Fifth and Fourteenth Amendments.  It simply cannot be argued that Defendants did not violate Ms. Jackson's constitutional rights. To do so would ignore concepts of basic human dignity, specific regulations proscribing Defendants' conduct, the legal declaration of Plaintiff's gender, and the shocking nature of the deprivation involved in this case.

---

[8] Under the Prison Rape Elimination Act, detention facilities "shall not search or physically examine a transgender or intersex detainee for the sole purpose of determining the detainee's genital status." 28 CFR 115.15 § 115(e). Additionally, under the Prison Rape Elimination Act, detention facilities "shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks." 28 CFR 115.15 § 115(d).

Additionally, Plaintiff was treated in a discriminatory manner by placing her and forcing her to shower with members of the opposite sex, and being subjected to a strip search to determine her sex, whereas non-transgender detainees were not subjected to such searches. Thus, Plaintiff was deprived of her right to equal protection of the laws and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States pursuant to 42 U.S.C. § 1983.

As the conduct described in Plaintiff's complaint infringed on Plaintiff's recognized fourth amendment, substantive due process, and equal protection rights, it is undeniable a violation of constitutional rights has been alleged. Based on the allegations, Plaintiff has shown Defendant Dallas County's policies, customs, and practices were a moving force behind the violation of Ms. Jackson's civil rights. Consequently, this Court should deny Defendant Dallas County's motion to dismiss Plaintiff's <u>Monell</u> claim.

III.    **Plaintiff has raised allegations sufficient to sustain a claim regarding Defendant's failure to properly train its employees, which led to the violation of Plaintiff's constitutional rights.**

Contrary to Defendant's conclusory arguments, Plaintiff has raised sufficient allegations to support a claim for Defendant's failure to adequately train its employees.

"It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." <u>Brown v. Bryan Cnty., Okla.</u>, 219 F.3d 450, 457 (5th Cir.2000) (subsequent appeal after remand of <u>Bryan Cnty.</u>, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626) (holding that a sheriff's failure to train a county deputy that resulted in constitutional violation could be county policy). Indeed, "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." <u>Id</u>. (quoting <u>City of Canton</u>, 489 U.S. at 390); <u>Oporto v. City of El Paso</u>, EP-10-CV-110, 2010 WL

3503457, at *7 (W.D. Tex. Sept. 2, 2010). "Deliberate indifference is a key component of a failure to train claim, as a failure to train claim supports § 1983 liability 'only where the failure to train amounts to a deliberate indifference to the rights of the persons whom the [officers] come into contact.'" Oporto, 2010 WL 3503457, at *7 (quoting City of Canton, 489 U.S. at 388). "If, in light of the duties assigned to specific officers, the need for more or different training is so likely to result in the violation of constitutional rights, the policymakers of a city can reasonably be said to have been deliberately indifferent to the need." Id. (quoting City of Canton, 489 U.S. at 390).

Here, it is important to recognize that Defendant, for purposes of its motion to dismiss, does not dispute that the strip search and treatment of Ms. Jackson differently than her legally recognized gender, were unconstitutional actions. It is also important that Plaintiff has clearly alleged Defendant was aware of the violative behavior of its employees yet did not provide training to address such offensive conduct. Grandstaff v. Barger, 767 F.2d 161 (5th Cir. 1985) (stating that if policy makers know or should know of officers' likely behavior, the city should be liable when the inevitable happens and the officers behave as expected). As alleged in Plaintiff's First Amended Complaint, Plaintiff filed a formal complaint regarding her treatment in the Dallas County jail, a Captain with the Dallas County Sheriff's Office was specifically notified of Plaintiff's treatment, and an investigation of the incident was conducted involving reviewing video of employees mistreating Plaintiff. ECF #18, First Amended Complaint at ¶¶ 80-83. It is also alleged that no training was provided by Defendant on the proper treatment of transgender individuals following the initial violation of Plaintiff's civil rights. And indeed, Plaintiff was mistreated in a similar fashion on two later occasions. ECF #18, First Amended Complaint at ¶¶ 84-98. A pattern of misconduct is apparent and the lack of any training, following awareness of

the violative conduct, demonstrates deliberate indifference on the part of Defendant in relation to the civil rights of transgender individuals.

There are clearly sufficient allegations that Defendant's inadequate training amounts to deliberate indifference to the rights of the persons with whom its employees come into contact, specifically, Ms. Jackson. Oporto, 2010 WL 3503457, at *7 (quoting City of Canton, 489 U.S. at 388). Additionally, Defendant, by failing to discipline the misconduct in this case, has endorsed and perpetuated the inadequate training and failure to enforce written policies and established standards regarding the Fourth Amendment to the United States Constitution.

Importantly, given that Defendant's employees stated they were acting according to policy, and Defendant has argued it has a written policy that prohibits the conduct engaged in by the employees, a failure to train the employees is patently evident.

**IV.  Defendant's argument that Plaintiff has failed to sufficiently plead Monell liability based on TCJS rules is nothing more than misdirection and mischaracterization.**

Defendant's argument that Plaintiff has failed to sufficiently plead Monell liability based on TCJS rules is a disingenuous amalgam of various strawman arguments. For instance, Defendant argues that a failure to follow a policy is insufficient to impose Monell liability. Motion to Dismiss at 15. This may be true, however, such is not an accurate portrayal of Plaintiff's claims.  Plaintiff's Monell claims center on the violation of Plaintiff's civil rights by Defendant's acting pursuant to an unwritten policy. Rather than address Plaintiff's actual claim, Defendant restates it as one it believes it can defeat. This is a classic strawman strategy and Defendant resorting to such a tactic demonstrates the absence of any valid argument against Plaintiff's actual claims.

In similar fashion, Defendant argues "the Prison Rape Elimination Act does not establish a private cause of action under § 1983." Motion to Dismiss at 16. It may be true that the Prison Rape Elimination Act does not provide a private cause of action, but such does not mean violation

16

of the Prison Rape Elimination Act is not actionable under § 1983 when such violation impacts an individual's constitutional rights, such as here.

Defendant next argues that "the alleged policy itself does not violate Plaintiff's Constitutional rights." This is only true if the policy is a written policy providing for the protection of transgender individuals' constitutional rights. But that is not the policy at issue. Rather, the policy at issue is the unwritten policy that permits detention personnel to disregard the written policy and conduct unreasonable strip searches, violate the clearly defined constitutional right to bodily privacy, and deny detainees their legally declared gender identity. Defendant hopes this Court will fall for its smoke and mirrors routine and believe Plaintiff's claims as Defendant falsely represents them to be. This is because Defendant has no argument regarding the actual policy at issue in Plaintiff's Monell claim.

Defendant also argues, in similar fashion to the Prison Rape Elimination Act, that violations of the Texas Administrative Code do not establish a constitutional violation and that the Texas Administrative Code does not provide any private cause of action. Plaintiff has not claimed the Texas Administrative Code establishes a constitutional right. But the violation of the Texas Administrative Code can establish the violation of a constitutional right, as is the case here. Also, it may be true that the Texas Administrative Code does not provide a private cause of action, but such does not mean violation of the Texas Administrative Code is not actionable under § 1983 when such violation impacts an individual's constitutional rights, such as here. Again, these are strawman arguments.

Finally, Defendant claims Plaintiff has not pleaded facts sufficient to infer deliberate indifference. This is a purely conclusory statement and not in accord with the actual allegations in this case which demonstrate such actual knowledge. As clearly articulated by one of Defendant's

employees, "**that's our policy. You can talk to Lupe Valdez about it when you get out.**" ECF #18, First Amended Complaint at ¶ 44. Moreover, a demonstration of deliberate indifference by a policy maker is not necessary in order to allege a <u>Monell</u> claim. As explained above, <u>Monell</u> liability may be based upon a custom of behavior among non-policymaking employees, which may be contrary to official policy, or a challenge to a policy that is not a deliberate choice among alternatives by a policymaker but is instead an inferred, informal policy. <u>See supra</u>.

**V.      Plaintiff should be permitted an opportunity to amend her Complaint to cure any perceived deficiencies so that this case may be decided on the merits.**

In the event the Court believes some aspect of Plaintiff's Complaint is inadequate, Plaintiff requests the opportunity to amend and allege additional facts to clarify Plaintiff's claims. Courts should permit a plaintiff "an opportunity to amend his complaint, rather than dismiss it, if it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." <u>Fuller v. Rich</u>, 925 F. Supp. 459, 461 (N.D. Tex. 1995), aff'd in part, 91 F.3d 138 (5th Cir. 1996) (citing <u>Friedlander v. Nims</u>, 755 F.2d 810, 813 (11th Cir.1985); <u>see also</u> <u>Dussouy v. Gulf Coast Investment Corporation</u>, 660 F.2d 594, 597–99 (5th Cir.1981)). Under Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires". FED R. CIV. P. 15. Indeed, Rule 15 "evinces a bias in favor of granting leave to amend." <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 597–98 (5th Cir. 1981). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." <u>Id.</u>; <u>see also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); <u>Sherman v. Hallbauer</u>, 455 F.2d 1236, 1242 (5th Cir. 1972) ("…Rule 15 of the Federal Rules of Civil Procedure permits a party to amend his pleadings out of time by leave of court, and commands that '[such] leave shall be freely given when justice so requires.'"). "Thus, unless there is a substantial reason to deny leave to amend, the discretion

of the district court is not broad enough to permit denial." <u>Dussouy</u>, 660 F.2d at 598 (citing <u>Lone Star Motor Imp., Inc. v. Citroen Cars Corp.</u>, 288 F.2d 69, 75 (5th Cir. 1961)).

Thus, should the Court believe there is any deficiency in Plaintiff's Complaint, Plaintiff respectfully requests the opportunity to amend and provide additional allegations supporting the claims in this case. Justice demands no less in a case of such importance than a determination on the merits, rather than on a perceived deficiency or technicality.

**<u>PRAYER</u>**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court deny Defendant's Motion to Dismiss. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was forwarded to all counsel of record, in a manner authorized by Rule 5, of the Federal Rules of Civil Procedure, on August 12, 2019.

*/s/Scott H. Palmer*
SCOTT H. PALMER

20