IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VALERIE JACKSON, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| LUPE VALDEZ, ET AL., | § | 3:18-CV-2935 |
| Defendants. | § | |
| | § | |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(6) ("MOTION")**

TO THE HONORABLE COURT:

COMES NOW Defendant Dallas County, Texas ("County" or "Defendant") and additional Defendants, Brenda Devers, Lola Pugh, Selma Littles and Pamela Nixon ("Additional Defendants"), and files their reply to Plaintiff's Brief in Response to Defendants' Motion to Dismiss Under Rule 12(b)(6) ("Response").

**I.    SUMMARY OF THE REPLY**

Plaintiff, Valerie Jackson ("Jackson"), fails to show that she pleads a plausible § 1983 claim. Jackson willingly notes that it "may be true" that a failure to follow a policy is insufficient to impose liability under *Monell*. (Doc. 30, p. 22). Additionally, Jackson admits that the Prison Rape Elimination Act ("PREA") does not provide a private cause of action, (Doc. 30, p. 22), and that a violation of the Texas Administrative Code does not provide a private cause of action. (Doc. 30, p. 23). However, Jackson then attempts to argue that, despite the fact that her apparent claims are based on alleged violations of statutory and regulatory law that do not provide a private cause of action, somehow these violations amount to a violation of constitutional rights. Notwithstanding Jackson's attempt to couch these alleged violations as rising to the level of a violation of rights under the

United States Constitution, Jackson fails to show that she pleads facts which allow a reasonable inference that the County had a persistent and widespread custom of violating its own written policy and instead of following its own written policy, Jackson alleges that the County, in practice, utilized a completely contrary unwritten "policy of permitting unconstitutional strip searches and refusal to recognize the legal gender of transgender individuals." (Doc. 30, p. 13). Finally, Jackson fails to show that she pleads facts which allow a reasonable inference that either Sheriff Valdez or Sheriff Brown were deliberately indifferent to the violation of the County's actual policy and utilization of a completely contrary unwritten policy, as alleged by Jackson. Based on these failures, the Court should grant Defendant's Motion.

Finally, due to Plaintiff's confirmation that they are "no longer pursuing claims against" the Additional Defendants, (Doc. 30, p. 7, footnote 2), Additional Defendants respectfully request that the Court grant their Motion and dismiss all claims against them with prejudice.

## II.    ARGUMENT AND AUTHORITIES IN REPLY

**A.    Violations of statutory/regulatory law do not provide a private cause of action under § 1983.**

The County asserts that violations of statutory/regulatory law cannot form the basis of a plausible § 1983 claim against it. (Doc. 23, p. 21-24). As explained in the Motion, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." *Lewis v. Sec. of Pub. Safety & Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.")(citations omitted). Accordingly, Jackson's alleged violations of the Texas Administrative Code cannot provide the basis of a plausible § 1983 claim, especially here where Jackson somehow attempts to elevate the language of their pleadings to characterize the concepts

that she: 1) should have been "separated by sight and sound from male inmates" and; 2) that an "appeals process was" not "made available" to her as somehow both being constitutional rights guaranteed by the United States Constitution. (Doc. 18, ¶ 105). The reason is obvious: the state's standards of care may exceed the Fourteenth Amendment's standards, and § 1983 liability requires a violation of federal constitutional standards, not state standards. *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989)("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'"). Additionally, as noted in its Motion, the Prison Rape Elimination Act does not establish a private cause of action under plausible § 1983. *Krieg v. Steele*, 599 Fed. Appx. 231, 232 (5th Cir. 2015) ("Insofar as Krieg argues that his rights under the Prison Rape Elimination Act . . . were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action.")(citing *Diamond v. Allen*, No. 7:14-CV0124, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014)(citing cases); *Amaker v. Fischer*, No. 10-CV-0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (holding that the PREA cannot support such a cause of action by an inmate); *Simmons v. Solozano*, No. 3:14-CV-P354, 2014 WL 4627278, at *4 (W.D.Ky. Sept. 16, 2014) (holding that the PREA creates no private cause of action)).

While Jackson attempts to characterize the County's argument as somehow misguided by arguing that the actual basis of her claims are due to violations of her Fifth and Fourteenth Amendment claim, in truth, as clearly outlined in her Response, Jackson's allegations are grounded on her allegations that the County ignored: 1) its own written policies; 2) the Texas Administrative Code; and 3) the Prison Rape Elimination Act; accordingly, Jackson alleges that, in practice, the County utilized a contradictory unwritten "policy of permitting unconstitutional strip searches and refusal to recognize the legal gender of transgender individuals." (Doc. 30, p. 13).

To that end, Jackson emphasizes in bold her main allegations in her Response, allowing us to infer that the crux of her argument lies herein:

1) "the process could not move forward without Ms. Jackson revealing her genitals, so that they could verify her genitalia." (Doc. 30, p. 8).

2) a County employee stated "that's our policy. You can talk to Lupe Valdez about it when you get out." (Doc. 30, p. 8-9, 13).

3) a County employee stated "No, you're going with the men because that's what you are. You're a man." (Doc. 30, p. 9).

4) a County employee stated "our policy is we have to verify that you've had a sex change. If you have a penis you're going with the men. If you have a vagina, you're going with the women." (Doc. 30, p. 13).

Accordingly, the crux of her argument is regarding an allegedly improper custom or policy; Jackson is unable to plead a plausible § 1983 claim for allegations of violations of the Texas Administrative Code and the Prison Rape Elimination Act.

**B.** **Jackson fails to show that her Complaint allows an inference of a County "policy of permitting unconstitutional strip searches and refusal to recognize the legal gender of transgender individuals." (Doc. 30, p. 12).**

The County asserts that Jackson does not plead facts sufficient to permit a reasonable inference of a County custom of employees ignoring their own written policy and utilizing an unwritten "policy of permitting unconstitutional strip searches and refusal to recognize the legal gender of transgender individuals." (Doc. 30, p. 12). Jackson disputes the County's arguments, and characterizes those arguments as lacking candor that leaves her dumbfounded. (Doc. 30, p. 14). Jackson further alleges that one of the "key allegations" of her case was that she was "subjected to an unreasonable strip search" in violation of the Prison Rape Elimination Act and the Texas

Administrative Code. (Doc. 30, p. 14-15). As evidence of the existence of the aforementioned unwritten policy, Jackson states that "violations occurred on multiple occasions to Plaintiff, and to others" and cites Exhibit B to her First Amended Complaint. Here again, as noted in the Motion, Plaintiff actually only alleges one single instance of an alleged strip search, not multiple occasions (Doc. 18, ¶ 47).

Furthermore, Jackson's attempt to rely on Exhibit B is misplaced, as it is a self-serving news article by the *Dallas Voice* that includes anonymous hearsay allegations made to the reporter who wrote the article after the filing of her Original Complaint in this case. Jackson does not confirm if the statements attributed to her or her attorney are even accurate. Even if the Court were to allow such extraneous evidence, the facts stated therein they do not comport with the personal knowledge requirements of Fed.R.Civ.P. 56(e).

Furthermore, the County would note that, even if admissible and even if accepted as true, 1) the allegations in the article do not show the prevalence of any type of custom or practice that was being utilized by the County at the time of Jackson's allegations of a violation of her constitutional right due to "an unreasonable strip search"; 2) it is impossible to tell from the article if many of these allegations are truly regarding actions taken by employees at the Dallas County Jail or by "police officers" from any number of the municipalities that operate within the boundaries of Dallas County; and 3) it is equally impossible to ascertain when most of these anonymous allegations occurred, as they could have been at any time, including many years prior to or after Jackson's visit to the Dallas County Jail and, indeed could have even occurred after the initial filing of her lawsuit. Again, even if these anonymous hearsay allegations were accepted as true, they are conclusory and wholly unrelated to any allegation of an unwritten custom of performing "an unreasonable strip search." Conclusory allegations that a custom or policy existed are not accepted as true. *Lewis v. Law-Yone*, 813 F. Supp.

1247, 1252-53 (N.D. Tex. 1993).

Plaintiff has failed to establish any pattern that would permit liability under § 1983. Jackson's failure to plead facts other than "naked assertions" does not rise to the level of an adequate pleading showing a custom or policy having the force of law, for purposes of § 1983, that is extended and pervasive. *See, e.g.*, *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) ("isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate").

Jackson also asserts that her First Amended Complaint plausibly pleads the requisite policymaker deliberate indifference to the alleged utilization of an unwritten policy that was contrary to the County's own written policy. However, while Jackson at least attempts to argue that she has pled facts sufficient to show: 1) a pattern that would establish the existence of an unwritten policy of ignoring the County's written policy; and 2) alleged deliberate indifference by policymakers, Jackson wholly fails to address her need to show that any policymaker had actual or constructive knowledge of the utilization of this alleged unwritten policy.  A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citations omitted).  "'Actual knowledge may b[e] shown by such means as discussion at council meetings or receipt of written information,'" while "[c]onstructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Okon v. Harris Cnty. Hosp. Dist.*, 426 Fed. Appx. 312, 316 (5th Cir. 2011)(per curiam).

Plaintiff relies on the following allegations that she states were made during her first visit to

the Dallas County Jail, as indicated in **bold** in her Response, to attempt to meet this requirement for actual or constructive knowledge by a policymaker:

1) That Jackson was advised that "the process could not move forward without Ms. Jackson revealing her genitals, so that they could verify her genitalia." (Doc. 30, p. 8).

2) That an employee advised her "that's our policy. You can talk to Lupe Valdez about it when you get out." (Doc. 30, p. 8-9, 13).

3) That an employee stated "No, you're going with the men because that's what you are. You're a man." (Doc. 30, p. 9).

4) That an employee stated "our policy is we have to verify that you've had a sex change. If you have a penis you're going with the men. If you have a vagina, you're going with the women." (Doc. 30, p. 13).

None of these allegations can show any type of actual knowledge by either Sheriff Valdez or Brown. None of these statements indicate that a policymaker was aware: 1) of an unwritten policy; or 2) that there was a violation of a written policy; or 3) that such a policy was prevalent to a level that was persistent or widespread. Accordingly, Jackson fails to show that her Complaint pleads a facially plausibly unconstitutional custom having the force of official policy, or policymaker deliberate indifference to the alleged custom. Therefore, the Court should grant the County's Motion.

**C.    Jackson fails to show that her Complaint allows an inference of a County custom of failing to adequately train Jail personnel.**

The County asserts that Jackson does not plead facts sufficient to permit a reasonable inference of a County custom of failing to provide to its employees constitutionally adequate training on the proper policy to follow with transgender prisoners. Jackson disputes this argument and states

that she has "clearly alleged Defendant was aware of the violative behavior of its employees yet did not provide training to address such offensive conduct." As evidence, Jackson notes her allegations that she "filed a formal complaint regarding her treatment in the Dallas County jail, a Captain with the Dallas County Sheriff's Office was specifically notified of Plaintiff's treatment, and an investigation of the incident was conducted involving reviewing video of employees mistreating Plaintiff." (Doc. 30, p. 21). Here, Jackson puts the cart before the horse by assuming any investigation of her formal complaint found an actual violation and she does not, in fact, allege that an investigation found that a violation occurred. Additionally, Jackson fails to articulate how: 1) the Dallas County Sherriff(s) / policymaker(s) became aware of the complaint she filed; 2) found that a violation of the County's policies occurred; and 3) then chose not to take action to provide an appropriate level of training. Jackson makes a conclusory allegation that a "pattern of misconduct" was apparent and that there was a lack of training showing deliberate indifference on the part of the Defendant. At most, even if all of Jackson's allegations were accepted as true, they would only show that her allegations regarding what she characterizes as a "unreasonable search" on her first visit to the Dallas County Jail were reported by her and potentially investigated by the County. There are no nonconclusory facts pled by Jackson to indicate: 1) an actual pattern or custom of violating the County's written policies being in place; 2) actual awareness by a policymaker; and 3) a conscious decision to fail to take action after becoming aware of such a pattern or custom. Deliberate indifference requires nonconclusory allegations of a pattern of prior actual constitutional violations which were "fairly similar" to what a plaintiff alleges transpired between the plaintiff and County employees. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Accordingly, it follows that her allegations of failure to train does not allow for a *Monell* claim. Therefore, the Court should grant Defendant's Motion.

**D.    Additional Defendants request that all claims against them be dismissed with prejudice.**

Pursuant to Additional Defendants' Motion and, due to Plaintiff's confirmation that they are "no longer pursuing claims against" the Additional Defendants (Doc. 30, p. 7, footnote 2), Additional Defendants respectfully request that the Court grant their Motion and dismiss all claims against them with prejudice.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that: (1) the Court grant Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's claims; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; (4) Defendant recovers all costs of suit and attorney's fees; and (5) for such other and further relief, general or special, at law and in equity, to which it may be justly entitled.

Similarly, Additional Defendants, Brenda Devers, Lola Pugh, Selma Littles, and Pamela Nixon, respectfully pray that: (1) the Court grants their Motion to Dismiss Plaintiff's claims with prejudice; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; and (4) for such other and further relief, general or special, at law and in equity, to which they may be justly entitled.

Respectfully submitted,

**JOHN CREUZOT
DISTRICT ATTORNEY**

/s/ Chong Choe
CHONG CHOE
ASSISTANT DISTRICT ATTORNEY
TEXAS BAR NO. 24012421
chong.choe@dallascounty.org

HILARY MILLER
ASSISTANT DISTRICT ATTORNEY
TEXAS BAR NO. 24063868
hilary.miller@dalascounty.org

CIVIL DIVISION
Dallas County Administration Building
411 Elm Street, 5th Floor
Dallas, Texas 75202
(214) 653-7358
(214) 653-6134 (FAX)

JASON G. SCHUETTE
ASSISTANT DISTRICT ATTORNEY
TEXAS BAR NO. 17827020
jason.schuette@dallascounty.org

JOHN BUTRUS
ASSISTANT DISTRICT ATTORNEY
TEXAS BAR NO. 03537330
john.butrus@dallascounty.org

FEDERAL LITIGATION DIVISION
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3692
(214) 653-2899 (FAX)

**ATTORNEYS FOR THE DEFENDANT**

## CERTIFICATE OF SERVICE

In accordance with the Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.1(d), I hereby certify that a true and correct copy of the foregoing instrument has been electronically served upon all parties.

/s/ Chong Choe<br>CHONG CHOE