**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| VALERIE JACKSON | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-cv-2935 |
| | § | |
| LUPE VALDEZ, MARIAN BROWN, | § | |
| SAMUEL JOSEPH, LIZYAMMA | § | |
| SAMUEL, UNKNOWN DALLAS | § | |
| COUNTY EMPLOYEE III, and | § | |
| DALLAS COUNTY, TEXAS, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S MOTION TO RECUSE AND BRIEF IN SUPPORT**

On September 3, 2019, this case was transferred from Judge Karen Gren Scholer to the newly appointed judge of this Court. Since that time, information has come to Plaintiff's attention that the judge of this court has a bias/prejudice against her. Thus, Plaintiff moves for recusal under 28 U.S.C. §§ 144 & 455.

## 28 U.S.C. § 144

28 U.S.C. § 144 provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.[1]

"When a party files a section 144 motion, the judge must pass on the sufficiency of the affidavit but may not pass on the truth of the affidavit's allegations. *Harmon v. Dallas County,* 3:13-CV-2083-L, 2017 WL 3394724, at *5–6 (N.D. Tex. Aug. 8, 2017). There are only three requirements for a legally sufficient affidavit: "(1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable [person] that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature." *Id.*

Here, Plaintiff's affidavit states the following material facts:

1. I believe any person would reasonably question and harbor legitimate doubts as to the newly assigned judge's impartiality as to me and my case. Specifically, I am a member of the transgender community and I am suing Dallas County and its employees and agents based on violation of my constitutional rights by conducting a strip search at the Dallas County jail solely to determine my gender, denying me my legally recognized gender of female, and placing me with the male detainee population. Categorizing me as male resulted in my being housed with male detainees and being forced to shower with male detainees.

2. Given the positions advocated by the Court prior to becoming a federal judge, a bias/prejudice exists against me as a member of the transgender community asserting my constitutional rights.

3. For instance, while a Deputy Attorney General for the State of Texas, the judge presiding over my case was involved in a lawsuit by the State of Texas to restrict the rights of transgender people in *Texas v. United States*. Exhibit 1, "Texas Sues Obama Administration Over Transgender Bathroom Directive." Leah Jessen, Daily Signal (May 25, 2016). The lawsuit against the Obama administration targeted its guidance that directed

---

[1] The Fifth Circuit Court of Appeals has held that the requirement that the affidavit be filed no less than ten days before the beginning of the term at which the proceeding is to be heard, is no longer effective since terms of court no longer exist. *Pomeroy v. Merritt Plaza Nursing Home, Inc.*, 760 F.2d 654, 658 (5th Cir. 1985) ("Since formal terms of court were long ago abolished, the literal ten-day requirement no longer applies."); *see also Harmon v. Dallas County*, 3:13-CV-2083-L, 2017 WL 3394724, at *6 (N.D. Tex. Aug. 8, 2017); *see also Texas Tech Univ. v. Spiegelberg*, CIV.A. 5:05-CV-0192-, 2006 WL 3591606, at *1 (N.D. Tex. Dec. 11, 2006). The only requirement as to timing is that a party "exercise reasonable diligence in filing an affidavit after discovering facts that show bias." *Pomeroy*, 760 F.2d at 658, As this case was transferred to this Court on September 3, 2019 and the affidavit is being submitted approximately two weeks after the transfer and discovery of the information demonstrating bias/prejudice that supports the affidavit, the filing should be considered to comply with any timing requirement.

public school districts to allow transgender students to use restrooms that corresponded with their gender identity. The judge presiding over my case stated that the concerns he had heard (and the implied basis for the lawsuit) was safety. This statement indicates the presiding judge in my case perceives transgender children as a threat to the safety of other children and that such was the reason the lawsuit was brought and why he was arguing in support of the lawsuit. In a June 2016 the presiding judge participated in an Attorney General opinion concluding that the Fort Worth, Texas school district violated state law in adopting a policy to implement the Obama administration's guidance permitting transgender students to use the bathroom of their gender identity. Exhibit 2, Opinion No. KP-0100. The opinion was viewed as seeking to give states like Texas a license to discriminate against transgender students.[2]

4. In an October 2015 panel discussion entitled "Gay Rights, States' Rights," the presiding judge over my case defended the right of county clerks to refuse to issue marriage licenses to same-sex couples following the United States Supreme Court's opinion in *Obergefell v. Hodges*. Exhibit 3, Leadership Conference on Civil and Human Rights letter to senators dated April 9, 2019. The judge of this Court stated: "If a clerk has a religious objection personally, state law currently allows them to delegate those duties to issue marriage licenses to others in their offices…. There is a new constitutional right after *Obergefell*, but we can't, in the rush to recognize that, gloss over the other rights that have always existed under the First Amendment, under the Religious Freedom Restoration Acts at the federal and state level, under employment law at the federal and state level." The judge of this Court participated in a June 2015 Attorney General opinion making similar points written in the wake of the *Obergefell* decision, referring with apparent skepticism to "[t]his newly minted federal constitutional right to same-sex marriage." Exhibit 4, Opinion No. KP-0025.

5. The judge presiding over my case has also testified before the Texas legislature supporting legislation to protect adoption agencies refusing to place children with same-sex couples. *See* Exhibit 5, Newstex, Committee Weighs 'License to Discriminate' Adoption Bill,

---

[2] As written in a letter opposing the judge of this Court's confirmation, the Alliance for Justice expressed the following views:

> Starr has been at the forefront of Texas's efforts to undermine LGBTQ equality. He led Texas's efforts to block federal guidance that protected transgender students under Title IX. Following *Obergefell v. Hodges*, Starr signed an opinion letter claiming that despite the Supreme Court establishing what he referred to as a "new constitutional right," civil servants, including clerks, judges, and justices of the peace, could refuse to issue marriage licenses to same-sex couples. Starr also supported a Texas House bill that advocates explained would allow groups "to discriminate," allowing them to "refuse to place foster children with gay couples or families with different religious backgrounds"

Exhibit 6, Letter dated May 8, 2019. The Leadership Conference on Civil and Human Rights, a coalition of more than 200 national organizations committed to promoting and protecting the civil and human rights of all persons in the United States, wrote a similar letter opposing the nomination of the judge of this Court based on his actions that expressed bias/prejudice against the anti-LGBTQ community. Exhibit 3, Leadership Conference on Civil and Human Rights letter to senators dated April 9, 2019.

> Texas Observer, Apr. 16, 2015 (https://www.texasobserver.org/license-to-discriminate-adoption-bill/).

6. In a written response to questions during the confirmation process for the bench he now holds, the judge of this Court refused to answer whether the Fourteenth Amendment requires that states treat transgender people the same as those who are not transgender. Exhibit 7, Questions for the Record April 17, 2019, page 13, Question 2(d). The judge of this Court also refused to answer a question as to whether history and tradition should not limit the rights afforded to LGBT individuals, other than to say he would apply binding precedent. *Id*. at p.15, Question 5(a). The judge of this Court also refused to answer whether he believes that the government has a compelling interest in eradicating discrimination against LGBT people, other than to reference an irrelevant answer to another question. *Id*. at p.28, Question 3(b).

7. In addition to his own public statements expressing views contrary to equal rights for those of the LGBTQ community, the judge of this Court supported the judicial nomination of Jeffrey Mateer, who was nominated in 2017 to preside over a different Texas federal court, but who was withdrawn in the wake of public outcry for such reasons as a comment that transgender children were part of "Satan's plan." Exhibit 8, Massie, Chris (September 20, 2017). "Trump judicial nominee said the issue of transgender children is a deception and part of 'Satan's plan', defended 'conversion therapy'", CNN. After Mr. Mateer was nominated, the judge of this Court issued a statement of support and declared that "Jeff Mateer leaves a legacy of service to the State of Texas and will now extend that service to all Americans." Exhibit 9, Press Release. Although claiming not to have known of Mr. Mateer's statement that transgender children were part of "Satan's plan", the judge of this Court does not appear to have disavowed such a belief nor did he publicly withdrawn his support for Mr. Mateer.

8. Based on the above, it is clear the judge presiding over my case has a bias/prejudice against me as a transgender individual. I do not believe, nor do I think any reasonable person could believe, that the judge would preside over my case in an impartial manner.

Exhibit A, Affidavit of Plaintiff.

Given that the presiding judge of this Court has fervently fought against equal rights for members of the LGBTQ community, and specifically transgender individuals, a clear bias/prejudice exists against Plaintiff. Furthermore, the facts contained in Plaintiff's affidavit show the bias/prejudice is personal, rather than of a judicial nature. Under 28 U.S.C. § 144, Plaintiff's affidavit is legally sufficient and the presiding judge can proceed no further in this case and another judge must be assigned.

**28 U.S.C. § 455**

Plaintiff also moves for recusal under 28 U.S.C. § 455(a). Section 455(a) requires that "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.*[3] "Since the goal of section 455(a) is to avoid even the appearance of impropriety, recusal may well be required even where no actual partiality exists." *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (citing *Liljeberg v. Health Svcs. Acquisition Corp.,* 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) and *Hall v. Small Business Admin.,* 695 F.2d 175, 178 (5th Cir.1983)).

In reviewing motions for recusal under section 455(a), the Fifth Circuit "has recognized that section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Bremers*, 195 F.3d at 226 (citing *United States v. Jordan,* 49 F.3d 152, 157 (5th Cir.1995)). "Thus, if a reasonable man, cognizant of the relevant circumstances surrounding a judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality, then the judge should find that section 455(a) requires his recusal." *Id*. (citing *United States v. Anderson*, 160 F.3d 231, 233 (5th Cir.1998) and *In re Faulkner,* 856 F.2d 716, 721 (5th Cir.1988)). "Consequently, a district judge's failure to recuse himself in such circumstances would constitute an abuse of discretion." *Id*.

Here, Plaintiff believes any person would reasonably question and harbor legitimate doubts as to this Court's impartiality as to the Plaintiff and her case. Specifically, Plaintiff is a member of

---

[3] Canon 3C(1) of the Code of Conduct for U.S. Judges similarly provides: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which... (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

the transgender community and is suing Dallas County and its employees and agents based on violation of her constitutional rights at the Dallas County jail, including a strip search conducted solely to determine gender, denying her the legally recognized gender of female, and placing her with the male jail detainee population. ECF #1. The categorization of Plaintiff as male resulted in her being housed with male detainees and being forced to shower with mail detainees. *Id*.

Given the positions advocated by the Court prior to being appointed to the federal bench, an apparent bias/prejudice exists against members of the LGBTQ community, and particularly those of the transgender community, such as Plaintiff. Although the judge of this Court has couched his crusade against equal rights for the LGBTQ community in terms of protecting religious liberty, there is an undeniable bias/prejudice against the LGBTQ community underlying the above actions. Plaintiff's Affidavit and the exhibits attached thereto present circumstances under which a reasonable man, cognizant of the relevant circumstances, would harbor legitimate doubts as to the presiding judge's impartiality.

Section 455(a) clearly warrants disqualification here. Avoiding even the appearance of judicial partiality is of paramount importance in our judicial system. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1988). Congress enacted subsection 455(a) to "promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible," *id*. at 864-65, and in Section 455(a) "broaden[ed] and clarif[ied] the grounds for judicial disqualification.'" *Id*. at 849 (quoting 88 Stat. 1609). Avoiding the appearance of partiality is so important that it does not matter "whether or not the judge actually knew of facts creating an appearance of impropriety." *Id*. at 859-60. Nor does it matter if the judge actually harbors bias or prejudice. Judicial disqualification is "evaluated on an objective basis, and

so **what matters is not the reality of bias or prejudice, but its appearance**." *Litekyv. United States*, 510 U.S. 540, 548 (1994) (emphasis added); *see Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009) ("the Due Process clause has been implemented by objective standards that do not require proof of actual bias"). Therefore, recusal is required "whenever 'impartiality might reasonably be questioned.'" *Id*. at 888 (quoting 28 U.S.C. § 455(a)). As the Sixth Circuit succinctly put it, the dispositive question is: "Would a reasonable person knowing all the relevant facts question the impartiality of the judge?" *Reed v. Rhodes*, 179 F.3d 453, 467 (6th Cir. 1999). Considering all of the above information, it would be impossible not to question the impartiality of the presiding judge of this Court in this case. Thus, recusal under 28 U.S.C. § 455(a) this required.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, after reviewing this motion and the Affidavit of Plaintiff, that the presiding judge of this Court recuse himself. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

    Respectfully submitted,

    */s/ Scott H. Palmer*
    SCOTT H. PALMER
    State Bar No. 00797196
    JAMES P. ROBERTS
    State Bar No. 24105721

    SCOTT H. PALMER, P.C.
    15455 Dallas Parkway,
    Suite 540, LB 32
    Dallas, Texas 75001
    Tel: (214) 987-4100
    Fax: (214) 922-9900
    scott@scottpalmerlaw.com
    james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was forwarded to all counsel of record, in a manner authorized by Rule 5, of the Federal Rules of Civil Procedure, on September 19, 2019.

*/s/Scott H. Palmer*
SCOTT H. PALMER

## CERTIFICATE OF GOOD FAITH

The undersigned certifies that this motion to recuse and the accompanying affidavit of the Plaintiff Valerie Jackson are filed in good faith.

*/s/Scott H. Palmer*
SCOTT H. PALMER

## CERTIFICATE OF CONFERENCE

On September 18, 2019 counsel for Plaintiff sent the foregoing Motion to Recuse to Defense counsel. On September 19, 2019 counsel for Plaintiff, James Roberts, spoke to Defense counsel in an effort to confer on the Motion to Recuse. Defense counsel could not state whether Defendants were opposed or unopposed to the Motion to Recuse at that time. As of the time of filing, Plaintiff had not yet received a response as to whether Defendants are opposed or unopposed to the Motion to Recuse.

*/s/Scott H. Palmer*
SCOTT H. PALMER

8