UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VALERIE JACKSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-02935-X |
| | § | |
| LUPE VALDEZ, MARIAN BROWN, | § | |
| SAMUEL JOSEPH, LIZYAMMA | § | |
| SAMUEL, UNKNOWN DALLAS | § | |
| EMPLOYEE III, and DALLAS | § | |
| COUNTY, TEXAS, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

In this action for deprivation of rights under 42 U.S.C. § 1983, the Court considers plaintiff Valerie Jackson's motion to recuse and brief in support [Doc. No. 40], filed on September 19, 2019. Jackson is a member of the transgender community and is suing Dallas County and its employees and agents for their alleged violations of Jackson's constitutional rights related to Jackson's gender identity. In the motion, Jackson claims that "the judge of this court has a bias/prejudice against her"[1] because of Jackson's gender identity. Jackson also believes that "any person would reasonably question and harbor legitimate doubts as to this Court's impartiality as to the Plaintiff and her case."[2] No defendant responded to the motion. After careful consideration, and as explained more fully below, the Court **DENIES** the motion.

---

[1] Plaintiff's Motion to Recuse and Brief in Support, at 1 [Doc. No. 40] (Motion to Recuse).

[2] *Id.* at 5.

1

I.

The Court begins by providing the legal standards that Jackson must satisfy under each statute to make a sufficient showing for recusal, as well as summarizing the arguments Jackson makes for recusal under each statute.

i.

Jackson first moves for recusal under 28 U.S.C. § 144. Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.[3]

Section 144 "applies only to charges of actual bias."[4] When considering a motion under section 144, the Fifth Circuit has specified that the "judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matter alleged."[5] There are three requirements for an affidavit to be legally sufficient: "(1)

---

[3] 28 U.S.C. § 144.

[4] *Harmon v. Dallas Cty.*, No. 3:13-CV-2083-L, 2017 WL 3394724 at *6 (N.D. Tex. Aug. 8, 2017) (Lindsay, J.) (citing *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990)).

[5] *Henderson*, 901 F.2d at 1296 (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 517 F.2d 1044, 1051 (5th Cir. 1975)).

2

the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature."[6] The alleged bias must be a "personal bias and prejudice against the party or in favor of the adverse party."[7]

Jackson's affidavit asserts that this judge, based on "positions advocated by the Court prior to becoming a federal judge," holds a bias or prejudice against Jackson "as a member of the transgender community asserting my constitutional rights."[8] Jackson attempts to support this claim with examples of this judge's legal advocacy in the course and scope of his prior employment with the State of Texas, including litigation, panel discussions, opinion letters, state congressional testimony, and press releases. Specifically, Jackson claims that:

- "[W]hile a Deputy Attorney General for the State of Texas, the judge presiding over my case was involved in a lawsuit by the State of Texas to restrict the rights of transgender people."[9]

- In June 2016, "the presiding judge participated in an Attorney General opinion concluding that the Fort Worth, Texas school district violated state law in adopting a policy to implement the Obama administration's guidance permitting transgender students to use the bathroom of their gender identity," and that the "opinion was viewed as seeking to give states like Texas a license to discriminate against transgender students."[10]

---

[6] *Id.* (citing *Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975)).

[7] *Parrish*, 524 F.2d at 100.

[8] Affidavit of Valerie Jackson, at 2 [Doc. No. 40-1] (Affidavit).

[9] *Id.* at 2.

[10] *Id.* at 2–3. To support the assertion that this Texas Attorney General Opinion was viewed in this way, Jackson cites to letters from the Alliance for Justice and The Leadership Conference on

3

- In an October 2015 panel discussion, "the presiding judge over my case defended the right of county clerks to refuse to issue marriage licenses to same-sex couples following the United States Supreme Court's opinion in *Obergefell v. Hodges*."[11]

- "The judge of this Court participated in a June 2015 Attorney General opinion making similar points written in the wake of the *Obergefell* decision, referring with apparent skepticism to '[t]his newly minted federal constitutional right to same-sex marriage.'"[12]

- "The judge presiding over my case has also testified before the Texas legislature supporting legislation to protect adoption agencies to place children with same-sex couples."[13]

- "[T]he judge of this Court supported the judicial nomination of Jeffrey Mateer, who was nominated in 2017 to preside over a different Texas federal court, but who was withdrawn in the wake of public outcry for such reasons as a comment that transgender children were part of 'Satan's plan.'" And although "claiming not to have known of Mr. Mateer's statement that transgender children were part of 'Satan's plan', the judge of this Court does not appear to have disavowed such a belief nor did he publicly withdraw his support for Mr. Mateer."[14]

In addition to citing examples from this judge's prior employment, Jackson cited this judge's written answers to a questionnaire during his federal judicial confirmation process:

---

Civil and Human Rights, who wrote the letters to express opposition to this judge's confirmation to this Court.

[11] *Id.* at 3.

[12] *Id.*

[13] *Id.* at 4.

[14] *Id.* at 4–5.

4

- "[T]he judge of this Court refused to answer whether the Fourteenth Amendment requires that states treat transgender people the same as those who are not transgender."[15]

- "The judge of this Court also refused to answer a question as to whether history and tradition should not limit the rights afford to LGBT individuals, other than to say he would apply binding precedent."[16]

- "The judge of this Court also refused to answer whether he believes that the government has a compelling interest in eradicating discrimination against LGBT people, other than to reference an irrelevant answer to another question."[17]

Because of these examples, Jackson claims that "it is clear the judge presiding over my case has a bias/prejudice against me as a transgender individual."[18] In this way, Jackson attempts to support the motion for recusal under section 144.

ii.

Jackson also moves for recusal under 28 U.S.C. § 455(a). Section 455(a) requires any United States judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[19]

The test for recusal under section 455(a) "is an objective one."[20] Jackson must show that, "the reasonable man, were he to know all the circumstances, would harbor

---

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 5.

[19] 28 U.S.C. § 455(a).

[20] *Harmon*, 2017 WL 3394724 at *6 (citing *IQ Prods. Co. v. Pennzoil Prods. Co.,* 305 F.3d 368, 378 (5th Cir. 2002)).

5

doubts about the judge's impartiality."²¹ A reasonable man is sometimes described as "the average person on the street."²² But the Fifth Circuit adds that a court ought to consider "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person."²³

Guided by this objective standard, the analysis of a section 455(a) claim is "fact driven" and "must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."²⁴ The district judge's decision to disqualify himself is within his "sound discretion" and is "reviewed for abuse of discretion."²⁵

Based on the affidavit's examples listed above, Jackson adds and concludes, "I do not believe, nor do I think any reasonable person could believe, that the judge would preside over my case in an impartial manner."²⁶ In so doing, Jackson attempts to support the motion for recusal under section 455(a).

---

²¹ *IQ Prods. Co.*, 305 F.3d at 378 (citing *Potashnick v. Port City Cons. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980)).

²² *Potashnick*, 609 F.2d at 1111.

²³ *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (citing *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)); *see Republic of Panama v. Am. Tobacco Co., Inc.*, 265 F.3d 299, 302 (5th Cir. 2001) ("In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality." (quoting *Trust Co. v. N.N.P.*, 104 F.3d 1478, 1491 (5th Cir. 1997))).

²⁴ *U.S. v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (citing *Jordan*, 49 F.3d at 157).

²⁵ *In re Deepwater Horizon*, 824 F.3d 571, 579–80 (5th Cir. 2016); *see also Breitling v. LNV Corp*. No. 3:15-CV-0703-B, 2016 WL 4126393, at *1 (N.D. Tex. Aug. 3, 2016) (Boyle, J.) ("The Fifth Circuit has noted that, despite the statute's mandatory language, a decision to recuse under § 455(a) is discretionary." (citing *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997))).

²⁶ Affidavit, at 5.

II.

Guided by these standards, the Court considers Jackson's arguments under sections 144 and 455(a).

i.

Contrary to the Fifth Circuit's requirements for legal sufficiency of claims under section 144, the facts alleged in Jackson's affidavit neither evince a personal bias nor would convince a reasonable person that a personal bias exists.

First, Jackson's affidavit cites examples of this judge's past legal advocacy in the course and scope of employment for the State of Texas—litigation, panels, opinion letters, state congressional testimony, and press releases. Never mind that these statements were on behalf of a client and not statements of personal views. But Jackson also misconstrues the positions that this judge advocated on behalf of his client. The Court responds to each allegation in turn:

- Jackson claims that the Texas Attorney General's litigation over the Department of Justice and Department of Education's "Dear Colleague Letter," which added "gender identity" as a category to Title IX, was "a lawsuit by the State of Texas to restrict the rights of transgender people."[27] But a different judge of this Court determined the case was not about policy but was actually about administrative law procedures and statutory interpretation.[28]

- Jackson claims that one Texas Attorney General Opinion "was viewed as seeking to give states like Texas a license to discriminate against

---

[27] *Id.* at 2.

[28] *See Texas v. United States*, 201 F. Supp. 3d 810, 815 (N.D. Tex. 2016) (O'Connor, J.) ("The resolution of this difficult policy issue is not, however, the subject of this Order. Instead, the Constitution assigns these policy choices to the appropriate elected and appointed officials, who must follow the proper legal procedure.").

7

transgender students."²⁹ Opponents to this judge's confirmation may have *viewed* the letter in any number of ways. But the Texas Attorney General Opinion only interpreted the State's binding law on local agencies and officials regarding parental involvement and the role of school boards.³⁰

- Jackson claims that this judge, in a panel discussion and in another Texas Attorney General Opinion, "defended the right of county clerks to refuse to issue marriage licenses to same-sex couples following the United States Supreme Court's opinion in *Obergefell v. Hodges*."³¹ This judge, then an attorney for the State of Texas, did not defend this as an absolute right. Instead, he reiterated the holding of the Texas Attorney General Opinion that the appropriate analysis is a "factually specific inquiry" balancing several competing constitutional and statutory rights.³² Three days after this Texas Attorney General Opinion was issued, the Fifth Circuit recognized that the religious liberties of government officials and employees continue to exist after *Obergefell*.³³ The accurate prediction of court rulings is not a ground for recusal.

- Jackson claims that this judge "testified before the Texas legislature supporting legislation to protect adoption agencies to place children with same-sex couples."³⁴ Actually, this judge, then as an attorney for the State

---

²⁹ Affidavit, at 2–3. To support the assertion that this Texas Attorney General opinion was viewed in this way, Jackson cites to letters from the Alliance for Justice and The Leadership Conference on Civil and Human Rights, who wrote the letters to oppose this judge's confirmation to this Court.

³⁰ *See* Op. Tex. Att'y Gen. No. KP-0100 (2016) (explaining that the letter was intended to answer "whether the 'Transgender Guidelines' adopted by the Fort Worth Independent School District ('FWISD') superintendent violate chapter 26 of the Education Code and whether the superintendent had authority to adopt them without adoption by a school board vote and without public comment").

³¹ Affidavit, at 3.

³² *See* Op. Tex. Att'y Gen. No. KP-0025 (2015) ("The Supreme Court has now declared a right under the Fourteenth Amendment for same-sex couples to be married on the same terms as accorded to couples of the opposite sex. County clerks and their employees possess constitutional and statutory rights protecting their freedom of religion. And employees possess rights under state and federal law to be free from employment discrimination on the basis of religion.").

³³ *De Leon v. Abbott*, 791 F.3d 619, 625 (5th Cir. 2015) ("*Obergefell*, in both its Fourteenth and First Amendment iterations, is the law of the land and, consequently, the law of this circuit and should not be taken lightly by actors within the jurisdiction of this court." (citation omitted)).

³⁴ Affidavit, at 4.

8

of Texas, testified only as a neutral resource witness to answer legal questions regarding the bill.[35]

- Jackson claims that this judge did not disavow statements by Jeffrey Mateer or publicly withdraw his support of Jeffrey Mateer.[36] This judge, then as an attorney for the State of Texas and a colleague of Jeffrey Mateer, is not and never has been under any obligation to respond to the statements attributed to Mateer, and those statements in no way reflect on this judge.

Second, Jackson also cites examples of this judge's federal judicial confirmation questionnaire answers. Contrary to Jackson's claim that these answers imply or express personal bias, they affirm this judge's commitment to faithfully apply the law and binding judicial precedent—including to Jackson's case. For example:

- Jackson claims that "the judge of this Court refused to answer whether the Fourteenth Amendment requires that states treat transgender people the same as those who are not transgender."[37] Actually, this judge affirmed that "[e]quality under the law is a vital element of our legal system," and then declined to comment on the specific question because Canon 3(a)(6) of the Code of Conduct for United States Judges prohibited him from opining on a legal issue in pending litigation.[38]

- Jackson claims, "The judge of this Court also refused to answer a question as to whether history and tradition should not limit the rights afforded to LGBT individuals, other than to say he would apply binding precedent."[39] Jackson is correct: this judge said, "If confirmed, I would fully and faithfully

---

[35] Tex. H. of Reps., Comm. on Juvenile Justice & Family Issues, Hearing on Pending Legis. (Apr. 15, 2015), *at* https://tlchouse.granicus.com/MediaPlayer.php?view_id=37&clip_id=10699 ("Chair: "You are the Deputy Attorney General. You are neutral on the bill." . . . The judge: "Brantley Starr. Deputy Attorney General for Legal Counsel at the Attorney General's office. Here as a neutral resource witness to testify on the bill. I'm happy to answer any questions the committee members may have.").

[36] Affidavit, at 4–5.

[37] *Id.* at 4.

[38] Motion to Recuse, Exhibit 7, at 13–14 [Doc. No. 40-8] (Judicial Questionnaire).

[39] Affidavit, at 4.

9

apply *Obergefell* and any other binding Supreme Court or Fifth Circuit precedent."[40]

- Jackson claims, "The judge of this Court also refused to answer whether he believes that the government has a compelling interest in eradicating discrimination against LGBT people, other than to reference an irrelevant answer to another question."[41] Actually, in referencing a previous answer, this judge confirmed that any of the judge's personal beliefs regarding whether the government has a compelling interest in eradicating discrimination were "irrelevant" when he testified on behalf of the Office of the Texas Attorney General and are "immaterial" now.[42] This is because this judge promised to set aside any personal beliefs "as a district judge and would fully and faithfully apply all binding precedent, as well as the law if no precedent exists," to any case before this judge.[43]

Jackson's allegations not only fail to satisfy section 144's requirements, but any deference to them would also make unworkable law. Under Jackson's theory, any person who has served as a government attorney—and, in that role, advocated under administrative and constitutional law the government's legitimate legal positions—could be characterized as personally biased against anyone who happens to disagree with the government's legal positions and political interests.[44] But there is no question that persons who have previously served as government lawyers can

---

[40] Judicial Questionnaire, at 15.

[41] Affidavit, at 4.

[42] Judicial Questionnaire, at 28.

[43] *Id.*

[44] *See Harmon*, 2017 WL 3394724 at *7 ("Under Plaintiff's theory, a person who served as a criminal defense attorney, or one who served in a prosecutorial capacity, could never preside as a federal judge in a criminal case because he or she would either be biased in favor of the defense or prosecution.").

10

effectively and fairly preside as federal judges.[45] Jackson's argument to the contrary is neither supported by authoritative evidence that demonstrates personal bias nor would convince a reasonable person of personal bias. Instead of demonstrating personal bias, Jackson's allegations are merely against the positions Texas advanced in litigation and state "no specific facts that would suggest" that this judge "would be anything but impartial in deciding the case before him."[46] Claims of bias like this are "general or impersonal at best."[47] Therefore, under section 144, Jackson's affidavit is legally insufficient.

ii.

Jackson's motion, affidavit, and supporting evidence also fail to satisfy section 455(a). The threshold reason for this failure is that although section 455 "controls recusal, it is not the proper statute under which to bring a motion to recuse."[48] Besides this threshold failure, the Court briefly addresses Jackson's erroneous claim that "it would be impossible not to question the impartiality of the presiding judge of this Court in this case."[49] The objective test for section 455(a) is "how things appear to the well-informed, thoughtful and objective observer, rather than the

---

[45] *See id.* (noting that "[t]here is no question that persons who have served previously as criminal defense counsel or prosecutors can effectively and fairly preside as federal judges over criminal cases").

[46] *Parrish*, 524 F.2d at 101.

[47] *Id.*

[48] *Brown v. Anderson*, No. 3:15-CV-0620-D, 2016 WL 4479515, at *1, n. 1 (N.D. Tex. Aug. 25, 2016) (Fitzwater, J.) (citing *Serino v. Florisi*, 2010 WL 2927304, at *1 (D. Nev. July 20, 2010)); *see, e.g., Serino*, 2010 WL 2927304, at *1 ("Section 455 contains no procedural requirement and is directed at the judge, not the parties.").

[49] Motion to Recuse, at 7.

11

hypersensitive, cynical, and suspicious person."[50]  Here, the Court has provided a detailed, factual analysis of Jackson's allegations misconstruing this judge's past employment and legal advocacy, as well as this judge's answers to a federal judicial confirmation questionnaire affirming that he would, if confirmed, faithfully apply precedent and the law to the facts of any case.  And so this Court concludes that a well-informed, thoughtful, and objective observer—aware of all the facts and circumstances described in this opinion—would not question this judge's impartiality in applying precedent and the law to this case.  Therefore, Jackson has not established that recusal is warranted or justified under section 455(a).

### III.

The Court concludes that under both statutes Jackson makes an insufficient showing for recusal.  The Court "recognizes that there may be valid reasons to seek recusal or disqualification of a judge, but Plaintiff's Motion to Recuse presents no valid reasons for recusal or disqualification."[51]  Therefore, the Court **DENIES** Jackson's motion under 28 U.S.C. § 144 or 28 U.S.C. § 455(a).

**IT IS SO ORDERED** this 22nd day of November 2019.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[50] *Jordan*, 49 F.3d at 156.

[51] *Harmon*, 2017 WL 3394724 at *8.