IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VALERIE JACKSON** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-cv-2935 |
| | § | |
| **LUPE VALDEZ, MARIAN BROWN,** | § | |
| **SAMUEL JOSEPH, LIZYAMMA** | § | |
| **SAMUEL, UNKNOWN DALLAS** | § | |
| **COUNTY EMPLOYEE III, and** | § | |
| **DALLAS COUNTY, TEXAS,** | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
Colorado Bar No. 46582

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

1

**TABLE OF CONTENTS**

I.  STANDARD ................................................................................................................................ 3
II.  OBJECTIONS .......................................................................................................................... 3
III. CONCLUSION ....................................................................................................................... 14
CERTIFICATE OF SERVICE .................................................................................................... 15

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, VALERIE JACKSON, Plaintiff, and files her Objections to the Magistrate's Findings, Conclusions, and Recommendation issued on February 27, 2020, and would respectfully show unto the Court as follows:

## I.  STANDARD

This Court conducts a *de novo* review of those portions of the Magistrate Judge's report or specified proposed findings or recommendations to which a timely objection is made. 28 U.S.C. § 636(b)(1)(C). In evaluating a motion brought under Rule 12(b)(6), as here, a court must accept all well-pleaded facts as true. *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 734 (5th Cir. 2019).

## II.  OBJECTIONS

1. The Magistrate states "To state a claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution ***and*** the laws of the United States …." (ECF 45, page 7) (emphasis added). Plaintiff objects, as the correct standard should require a plaintiff to "allege a violation of a right secured by the Constitution ***or*** laws of the United States…." *James v. Tex. Collin Cnty*., 535 F.3d 365, 373 (5th Cir.2008) (citation and internal quotation marks omitted, emphasis added); *see also Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854–55 (5th Cir. 2012). There is no need for the right to be secured by both the constitution and the laws of the United States, but rather, the right may be secured by either the Constitution or the laws of the United States.

2. The Magistrate states that "[a] municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights." (ECF 45, page 8) Plaintiff objects, as the correct standard should include "practices" as well as

customs and policies. *Malone v. City of Fort Worth, Texas*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, et al.*, 379 F.3d 293, 309 (5th Cir. 2004)).

3.   The Magistrate relies on *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) and *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) for the proposition that the Fifth Circuit has found "the allegation that '[an officer] was acting in compliance with the municipality's customs, practices or procedures' insufficient to adequately plead a claim of municipal liability." (ECF 45, page 9) Plaintiff objects because the allegation of a policy, custom, or practice in *Spiller* was conclusory and not connected to the alleged injury. Here, Plaintiff has alleged a specific declaration of a custom, practice, or policy by detention personnel charged with executing the policy, and has offered multiple instances in which the policy was enforced. In *Fraire*, as in *Spiller*, the allegations of policy were unsupported by any facts, and was based primarily on the failure of the municipality to discipline the police officer regarding the underlying violation of the plaintiff's rights. *Fraire* and *Spiller* are not at all on point with the present case.

4.   The Magistrate states that "[t]he County argues that Plaintiff failed to plead sufficient facts to show an official policy of improperly searching and classifying transgender inmates, as evidenced by custom." (ECF 45, page 9) Plaintiff objects to the Magistrate's apparent assumption that Plaintiff is relying solely on "custom" as evidence of policy. (ECF 45, page 9-11) Plaintiff also relies on the express statement by detention personnel that it is "policy" to conduct strip searches to verify sex changes and to place detainees with the male or female population of detainees depending upon genital inspection. In the words of detention personnel "that's our policy. You can talk to Lupe Valdez about it when you get out." Thus, the jail policy, as expressly

articulated by detention personnel, is to perform strip searches to determine sex and placement of detainees in with a particular gender population. Detention personnel even went so far as to identify Sheriff Lupe Valdez as the source of the policy. Sheriff Lupe Valdez was the policy maker for the jail at the time.

5. The Magistrate states that "[a] plaintiff may prove the existence of a custom by alleging 'a pattern of abuses that transcends the error made in a single case.'" (ECF 45, page 10) Plaintiff objects to the narrow statement as to how a plaintiff may prove existence of a custom, as this is not the only manner in which a custom, practice, or policy may be established. A custom, practice, or policy can be evidenced by a declaration of the custom, practice, or policy, such as exists here.

6. The Magistrate states that "[a]lthough she points to her three prior detentions at the Dallas County jail and a 2013 incident involving C.W., she does not plead similar specific instances of genital searches for purposes of placement." (ECF 45, page 11) Plaintiff objects to the determination that Plaintiff did not alleged a sufficient number of genital searches to demonstrate a custom, practice or policy. The Magistrate does not take into account that the population of transgender detainees is very small, which is in contrast to the authority upon which the Magistrate relies for requiring a great number of identical incidents in order to show a custom. *See e.g., Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (5,000 reported criminal offense reports in the City of Houston). The fact that Ms. Jackson was subjected to similar treatment on three occasions over a relatively short time period, and at least one other individual has been subjected to similar treatment, is a sufficient basis for an allegation of a custom, practice, or policy. It must be remembered that Plaintiff has not been permitted to conduct any discovery. In the cases relied upon by the Magistrate, two of the case involved summary judgment, and the third involved a jury

5

verdict. Here, the Magistrate was reviewing a motion to dismiss, not a motion for summary judgment after discovery has been conducted or a jury verdict. Considering the limited transgender population in the detention facility, and the current stage of litigation, requiring a greater number of incidents is unreasonable and unjust. Additionally, the Magistrate ignores the instances in which Plaintiff was not strip searched but still placed among the male population. Such shows the unconstitutional and prohibited practice and custom of placing female transgender detainees with the male detainee population based solely on physical sex characteristics. The magistrate ignores Plaintiff's claims in relation to these violations of her rights.

7. The Magistrate states that "[p]laintiff has alleged only a single incident, which is insufficient to infer a custom." (ECF 45, page 11) Plaintiff objects to this conclusion for the same reasons as stated immediately above. Additionally, it should be noted that the Fifth Circuit has held that in "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

8. The Magistrate relies on *Fuentes v. Nueces County, Texas*, 689 Fed. Appx. 775, 778 (5th Cir. 2017) in concluding Plaintiff has not identified enough incidents of similar abuse. (ECF 45, page 11-12) Plaintiff objects because *Fuentes* involved four incidents of inmate suicide over a 20-year span. The Magistrate does not take into consideration that *Fuentes* involved an entire detainee population over a period of time approximately ten times longer than involved here. Fuentes also involved a summary judgment, which presumably followed a period of discovery.

9. The Magistrate states that, "[Plaintiff's] complaint alleges that Officers and Nurse twice acknowledged a policy to search genitalia for purposes of determining placement that they

6

impliedly attributed to Sheriff Valdez, and that Captain Knight stated to the media that she "could see where some of the policy was misconstrued and other parts were not followed." (ECF 45, page 12) Plaintiff objects to the characterization that the statement of policy was "impliedly attributed to Sheriff Valdez…." There were express statements by detention personnel that it is "policy" to conduct strip searches to verify sex changes and to place detainees with the male or female population of detainees depending upon genital inspection. In the words of detention personnel "that's our policy. You can talk to Lupe Valdez about it when you get out." This is not attribution by implication, but rather an express attribution of a "policy" to the policy maker, Lupe Valdez. It is simply baffling that this could be perceived as anything but an express statement of policy attributable to the policymaker, Lupe Valdez.

   10.   Plaintiffs object to the Magistrate's reliance on *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 618 (N.D.Tex. 2016). (ECF 45, page 12-13) *Bryan* is completely distinguishable from the present case. In *Bryan* there were no facts suggesting any policymaker "officially adopted and promulgated" the purported policy. *Bryan*, 188 F. Supp. 3d at 617. Here, it has been alleged that the policymaker, Sheriff Lupe Valdez, specifically implemented the strip search policy. Further, the allegations of policy were simply in relation to training provided, not a specific policy, as here. *Id*. at 618. Interestingly, the Magistrate cites to *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016) as allegedly distinguishable from the present case, when in reality *Groden* provides a clear analogue to the circumstances in this case. *Groden* involved allegations that the city's official spokesman publicly announcing a new policy of "cracking down" on street vendors and giving media interviews sufficiently plead an official policy made by the policymaker. Here, we have a statement that the strip search policy is attributable to the policymaker, Lupe Valdez, and a statement to the media by Captain Knight of the Dallas County Sheriffs Department that the

7

official written policy was violated. In both cases you have a non-policymaker employee making a statement of policy attributable to the policy maker.  There is only a minor distinction in that *Groden* involved a spokesperson and here the person making the statement tis someone involved in executing the policy. But even then, we have an admission in the media from a Dallas County Sheriffs Department, Captain Knight, that policies were violated. This case is on all fours with *Groden*, where the court held the plaintiff had sufficiently plead an official policy made by the policymaker.

11. Here, Plaintiff references three statements by County employees referring to a policy impliedly attributed to Sheriff Valdez, two of which were made by the same persons, and a third that did not specifically reference the alleged policy. (ECF 45, page 13) Plaintiff objects to the Magistrate's characterization of the statements "impliedly" attributing the policy to Sheriff Valdez for the same reasons as stated above.

12. The Magistrate states "[e]ven viewing those allegations in the light most favorable to Plaintiff, however, she pleads no facts that 'adequately connected a policy to the policymaker.'" (ECF 45, page 13) Plaintiff objects to this conclusion as the Magistrate has not viewed the allegations in a light most favorable to Plaintiff. Furthermore, Plaintiff has clearly connected the policy of strip searches for the purpose of determining gender to Sheriff Lupe Valdez. Viewing the express statements by detention personnel that it is "policy" to conduct strip searches to verify sex changes and to place detainees with the male or female population of detainees depending upon genital inspection and "that's our policy. You can talk to Lupe Valdez about it when you get out" cannot be reasonably viewed, even in a light unfavorable to Plaintiff, as anything other than an attribution of the strip search policy to Sheriff Lupe Valdez, the policy maker.

13. The Magistrate states that "[Plaintiff] pleads no institutional admissions or statements by a policymaker, only by non-policymaking employees." (ECF 45, page 13) Plaintiff objects to this statement because there is no requirement of "institutional admissions or statements by a policymaker" in order to attribute a policy to a policymaker. Although those may be ways in which a statement may be so attributed, they are not the only ways. Here, the policy was attributed to the policy maker by personnel responsible for executing the policy, detention personnel.

14. The Magistrate concludes that "[b]ecause Plaintiff only relies on statements from non-policymaking employees to show a policy or custom of searching genitalia for purposes of transgender detainee placement, she has not sufficiently alleged an official policy, as evidenced by a persistent widespread practice so common and well settled as to constitute a custom that fairly represents municipal policy." (ECF 45, page 14) Plaintiff objects to the Magistrate's conclusion because she has not relied solely on a bare statement from a non-policymaking employee as to policy. Rather, the detention personnel articulated the policy, executed the policy upon Plaintiff, and then attributed it directly to the policymaker, Sheriff Lupe Valdez. The Magistrate ignores this critical and devastating evidence, rather than viewing it in a light most favorable to the Plaintiff. Again, this is not a summary judgment, but rather a motion to dismiss. Plaintiff need not rely on evidence, as required by the Magistrate in this conclusion. Plaintiff must merely allege a policy, which she has undoubtedly done. Moreover, Plaintiff does not rely solely on the statements from detention personnel of Sheriff Lupe Valdez's policies, but also on the execution of those policies in relation to Plaintiff and at least one other detainee. All this, without any discovery being permitted.

15. The Magistrate states "[e]ven if Plaintiff had alleged facts of a widespread practice of genitalia searches for gender classification by jail staff at the Dallas County jail, she has not

9

alleged facts to show 'actual or constructive knowledge of such custom' by the municipality or the official who had policymaking authority.'" (ECF 45, page 15) Plaintiff objects to this statement by the Magistrate because it ignores the fact that detention personnel identified Sheriff Lupe Valdez as the individual responsible for the policy. How could Sheriff Lupe Valdez, the policymaker, not have known of the policy she implemented? Viewing the evidence in the light most favorable to Plaintiff, as required, it is simply impossible for the policymaker to not have known of her own policy creation.

16.     The Magistrate states "[t]here are no allegations that issues involving transgender detainees at the Dallas County jail were considered at an official meeting attended by Sheriffs, or that information about the purported custom had been directed to Sheriffs." (ECF 45, page 15) Plaintiff objects to this statement because there is no authority requiring an official meeting attended by personnel tasked with implementing the policy, or that information about the policy be "directed" to such personnel. However, there is evidence that such information had been directed to detention personnel by the fact that the detention personnel articulated the policy, executed the policy, and then attributed the policy to the policymaker, Lupe Valdez. Viewing the evidence in the light most favorable to Plaintiff, as required, this is evidence that the policy was directed to the detention personnel.

17.     The Magistrate states that, "[p]laintiff's response to the motion to dismiss appears to argue that Sheriffs had been 'aware of the violative behavior of its employees' because she had "filed a formal complaint regarding her treatment in the Dallas County jail, a Captain with the Dallas County Sheriff's Office was specifically notified of [her] treatment, and an investigation of the incident was conducted involving reviewing video of employees mistreating [her].' (See doc. 30 at 21.) Even if considered part of the complaint, these allegations are insufficient to show

Sheriffs' actual or constructive knowledge." (ECF 45, Footnote 7 on pages 15-16) Plaintiff objects to the suggestion that these allegations were not in the complaint. Such allegations appear at paragraphs 81-84 of Plaintiffs First Amended Complaint. Additionally, Plaintiff objects to the conclusion that the filing of a formal complaint and an investigation being conducted, viewed in a light most favorable to Plaintiff, would not constitute evidence of actual or constructive knowledge.

18. The Magistrate states that, "Plaintiff has not identified a specific training policy and makes only conclusory allegations that the County's training policies or procedures were inadequate." (ECF 45, page 17) Plaintiff objects because she has specifically alleged a failure to train detention personnel in relation to policies related to searching transgender/intersex/gender nonconforming individuals.[1] In fact, Captain Knight with the Dallas County Sheriff's Department has admitted that some policies were "misconstrued and other parts were not followed" in relation to Plaintiff. This is additional evidence that detention personnel were either not trained, inadequately trained, or trained improperly.

19. The Magistrate states that, "[b]ecause Plaintiff has failed to allege even the existence of an allegedly inadequate training policy or procedure, she has failed to sufficiently plead the first element that "a training policy or procedure was inadequate." (ECF 45, page 18) Plaintiff objects to this statement for the same reasons as set forth immediately above.

20. The Magistrate states that Plaintiff "fails to allege facts showing deliberate indifference." (ECF 45, page 18) Plaintiff objects to this statement because she has alleged facts regarding deliberate indifference. Indeed, the fact that Plaintiff continued to be placed with the

---

[1] Dallas County Sheriff's Department General Orders/Code of Conduct Vol. I Chapter 11.2 § VII(4)1 ("Transgender/ intersex/ gender nonconforming individuals will not be pat searched, frisk searched or strip searched for the sole purpose of determining their genital status.").

male population even after filing a formal complaint and an investigation was conducted after which it was recognized by the Dallas County Sheriff's Department that some policies were "misconstrued and other parts were not followed" in relation to Plaintiff, all goes to demonstrate deliberate indifference to the need for training and supervision.

21.     The Magistrate states that, "[Plaintiff] claims that the County's 'practices, policies, customs and/or the constitutionally inadequate training were the moving forces behind the constitutional violations that resulted in [her] mental/emotional injuries.' (Id.) In support, Plaintiff again points to the three times she was booked into the Dallas County jail and the 2013 incident involving C.W. (See id. at 21.)" (ECF 45, page 19) Plaintiff objects to this statement because it ignores the statement by detention personnel that it is "policy" to conduct strip searches to verify sex changes and to place detainees with the male or female population of detainees depending upon genital inspection. In the words of detention personnel "that's our policy. You can talk to Lupe Valdez about it when you get out."

22.     The Magistrate states that, "[b]ecause these incidents are distinguishable from each other and are not sufficiently numerous to establish a pattern, they are insufficient to show a custom or policy supporting municipal liability under the theories of failure to train, supervise, or discipline. See Lopez-Rodriguez v. City of Levelland, Tex., 100 F. App'x 272, 274 (5th Cir. 2004); see also Fuentes, 689 F. App'x at 778." (ECF 45, page 19-20) Plaintiff objects to this statement in that it fails to view the allegations in a light most favorable to Plaintiff. Also, Plaintiff objects for the same reasons as discussed above regarding the allegations being sufficiently numerous to establish a custom, practice, or policy. Additionally, the authorities upon which the Magistrate relies involve summary judgments, presumably following a period of discovery, rather than motions to dismiss, as involved here.

23. The Magistrate states that, "[Plaintiff] alleges that she filed a formal complaint after the 2016 incident, and that Captain Knight received notice of that dispute, (see doc. 18 at 9-10), but these allegations are insufficient to show that the purported policymakers had notice of the 2016 incident or any other incident. Additionally, she alleges no facts in support of her assertion that the County's alleged failures reflect deliberate indifference on part of its policymakers. (See id. at 22.)" (ECF 45, page 20) Plaintiff objects to this statement in that it fails to view the allegations in a light most favorable to Plaintiff. Also, Plaintiff objects because the Magistrate ignores the statement by detention personnel that it is "policy" to conduct strip searches to verify sex changes and to place detainees with the male or female population of detainees depending upon genital inspection. In the words of detention personnel "that's our policy. You can talk to Lupe Valdez about it when you get out." It is simply inconceivable that the policymaker, Lupe Valdez, would not know about a policy she created and implemented. Plaintiff also objects because she has alleged facts regarding deliberate indifference. Indeed, the fact that the policy has been attributed directly to the policymaker and Plaintiff continued to be placed with the male population even after filing a formal complaint and an investigation was conducted after which it was recognized by the Dallas County Sheriff's Department that some policies were "misconstrued and other parts were not followed" in relation to Plaintiff, all goes to demonstrate deliberate indifference to the need for training and supervision.

24. The Magistrate states in relation to the so-called single incident exception that, "[t]o the extent Plaintiff relies on this exception based on her allegations the defendants 'provided no training or inadequate training to employees on how to deal with' transgender detainees, she does not allege any facts in support of her conclusory allegations. (See doc. 18 at 25.) Additionally, the exception would not apply because she does not claim that the County's employees "w[ere]

13

provided no training whatsoever." (ECF 45, footnote 11 on page 20) Plaintiff objects because she has alleged that detention personnel were not trained on the proper policy and were instead trained on an improper and illegal policy of conducting strip searches solely to determine gender, as well as placing transgender individuals with the population with which they share the same physical sex characteristics. Additionally, Plaintiff objects because the Magistrate is taking a general rule and applying it absolutely. This case presents circumstances so extreme and outrageous as to warrant application of the so-called single incident exception.

### III. CONCLUSION

Plaintiff respectfully asks this Court to reject the Magistrate's findings, conclusions, and recommendation, to evaluate the pleadings on their merits, and to deny the Defendant's motion to dismiss.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
Colorado Bar No. 46582

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on March 12, 2020, this document was filed and served through the ECF system on all counsel of record.

                                        */s/ Scott H. Palmer*
                                        Scott H. Palmer